**James Thomas LAPOINTE, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1100–06.**

Court of Criminal Appeals of Texas.

April 25, 2007.

Rehearing Denied June 27, 2007.

---

7. *See Bufkin v. State,* 207 S.W.3d 779, 782 (Tex.Crim.App.2006).

8. *Posey v. State,* 966 S.W.2d 57, 61–64 (Tex. Crim.App.1998).

Gregory Sherwood, Austin, for Appellant.

Doug Arnold, Georgetown, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KELLER, P.J., delivered the unanimous opinion of the Court.

Does the rule requiring a "hearing" before determining whether to admit evidence of the alleged victim's past sexual history contemplate an adversarial proceeding? And if it does, and if the trial

court fails to afford such a proceeding, may the appellate court order a retrospective hearing? We answer both of these questions "yes," and finding that the trial court conducted the retrospective hearing properly, we affirm the judgment of the court of appeals.

## I. BACKGROUND

Appellant was convicted of a variety of offenses committed against his estranged wife: one count of aggravated kidnapping, one count of assault family violence (second offense), and three counts of aggravated sexual assault. At trial, defense counsel sought to cross-examine the victim regarding her prior sexual history for the purpose of "exploring a bias or motive for testifying." Defense counsel told the trial judge that he believed the victim had "engaged in sex with multiple partners at various times." The State objected on the basis of Texas Rule of Evidence 412. The trial judge decided to address the admissibility issue in an *in camera* hearing where only the judge and the victim were present. The judge specifically declined to allow defense counsel to question the witness for the purpose of making a bill of exception, but the trial judge did offer to ask the victim any questions the defense wished to submit.

After the prosecution's direct examination of Nurse Kathleen Gann, the defense sought to cross-examine her on the victim's prior sexual history. Again, the trial judge refused to permit defense questioning of the witness for the purpose of creating a bill of exception. Instead, the trial judge adhered to the same procedure used with the victim: defense counsel submitted

questions and the hearing was held with only the trial judge and the witness being present. Defense counsel requested that the trial judge inquire about "deep vaginal bruising" and whether this bruising was consistent with the use of "sex toys" and whether the victim had a history of sex-toy use with the defendant. When asked for clarification, defense counsel said he specifically wanted to know if the victim engaged in sex with a particular person and "used an object that was deeply plunging" into her sex organ.

Defense counsel was permitted to make a bill of exception regarding certain other matters with some relevance to this discussion. A portion of a medical report was read into the record, and later the entire report was submitted as an exhibit. The report indicated that the victim suffered from bipolar disorder and had a problem with alcohol.

Appellant complained on appeal that the trial court erred in excluding defense counsel from the *in camera* hearings. The court of appeals agreed, holding that the trial court's procedure violated both Rule 412 and the Confrontation Clause of the United States Constitution, and deprived appellant of his constitutional right to the effective assistance of counsel.[1] Concluding that the trial court's errors "prevented the development of a record on which [the court] might determine that the error was harmless beyond a reasonable doubt," the court of appeals reversed the trial court's judgment and remanded the case for a new trial.[2]

After the State filed a motion for rehearing, the court of appeals withdrew this

---

1. *LaPointe v. State*, No. 03–03–00460–CR, slip op. at 8–20, 2005 WL 607723 (Tex.App.-Austin, Mar. 17, 2005).

2. *Id.* at 21–22, 22 n. 16. The court of appeals' disposition, "proceedings consistent with this opinion" is a little unclear, but the footnote suggests that the court of appeals meant by this a new trial. *See id.*

opinion and substituted a new opinion.[3] In the new opinion, the court of appeals altered the remedy, choosing instead to abate the appeal and remand the case for a retrospective *in camera* hearing that permitted the presence of the parties and the questioning of the witnesses by the parties' attorneys.[4]

On the day the hearing was scheduled by the trial court, appellant requested a continuance to prepare. The trial court granted a continuance as to the victim but denied the continuance with respect to the nurse because she currently lived out-of-state and the prosecution had produced her for the hearing. Defense counsel was able to question Nurse Gann about any knowledge she had acquired about the victim's past sexual history, but the trial judge prohibited certain questions that he perceived had nothing to do with Rule 412. These latter, prohibited questions included asking (1) whether the victim took a certain medication prescribed for bipolar disorder, (2) the symptoms of bipolar disorder, including sexual activity, (3) whether the victim ever conveyed that she had been suicidal, and (4) whether the victim mentioned any custody issues regarding her son.

At the continued hearing, defense counsel was given wide latitude in cross-examining the victim. The trial judge overruled all but two of the prosecutor's objections. In the first sustained objection, the trial judge prohibited defense counsel from having the victim read from a medical report that had been entered as an exhibit because the judge believed that the exhibit

spoke for itself. The second sustained objection was to questions relating to the victim's alcohol use.[5]

After cross-examining the victim, defense counsel requested that Gann be recalled as a rebuttal witness. The trial judge initially denied the request, but he amended the ruling to allow defense counsel to submit proposed questions that the trial judge would review to determine whether to go through the time and expense of recalling the out-of-state witness. No questions were ever submitted.

When the court of appeals received the case back on appeal, appellant advanced several arguments relating to the retrospective hearing. He argued that the trial court had no jurisdiction to conduct the hearing because a petition for discretionary review was pending in this Court, that the trial court erred in prohibiting some of defense counsel's questions, and that the trial court erred in refusing to allow defense counsel to recall Nurse Gann.[6] The court of appeals rejected all of these claims. It held that the petition for discretionary review was not proper because the abatement order was interlocutory, that the trial court properly limited the hearing to the victim's past sexual history, and that appellant failed to preserve for review any issue with regard to recalling the nurse. This last claim was rejected because appellant failed to submit any questions and because his original motion for continuance did not specify "what records he was seeking, how those records would be useful, or whether he could have obtained those records for the subsequent hearing" involving

---

3. *LaPointe v. State*, 166 S.W.3d 287, 289 (Tex. App.-Austin 2005, pet. dism'd).

4. *Id.* at 300–301.

5. Although not relevant to our disposition, we observe that the trial judge's rulings appeared to be even-handed. Several times the judge

sustained defense objections to the prosecutor's questions, including an attempt by the prosecutor to elicit information about *appellant's* prior sexual history.

6. *LaPointe v. State*, 196 S.W.3d 831, 834–835 (Tex.App.—Austin 2006).

the victim.[7] After this discussion, the court of appeals concluded that the trial court's error in excluding the defendant and his counsel from the *in camera* hearings at trial was cured by the two-part retrospective hearing.[8] Addressing the merits of the Rule 412 issue, the court of appeals held that appellant failed to elicit any admissible evidence at the retrospective hearing.[9] Addressing and rejecting appellant's other points of error, the court of appeals then affirmed the conviction.[10]

Both parties petitioned for discretionary review. We granted appellant's first and third grounds for review and all four of the State's grounds. In his first ground, appellant claims that a retrospective hearing was not a proper remedy for the trial court's error in refusing to conduct a proper *in camera* hearing at trial. In his third ground, he claims that the trial judge did not conduct the retrospective hearing properly, because some questions were disallowed and because he was neither granted a continuance with respect to the nurse nor permitted to recall her at the second part of the hearing.[11] In its first two grounds for review, the State complains that the court of appeals failed to address its arguments that appellant failed to preserve any constitutional claim at trial. In its third and fourth grounds, the State contends that the court of appeals erred in holding that Rule 412 requires that the parties be present and that counsel be permitted to question the witnesses.

## II. ANALYSIS

### A. Rule 412's *in camera* hearing

■ Rule 412(c), which sets forth the procedures for determining the admissibility of evidence of prior sexual history, provides:

**Procedure for Offering Evidence.** If the defendant proposes to introduce any documentary evidence or to ask any question, either by direct examination or cross-examination of any witness, concerning specific instances of the alleged victim's past sexual behavior, the defendant must inform the court out of the hearing of the jury prior to introducing any such evidence or asking any such question. After this notice, the court *shall conduct an in camera hearing, recorded by the court reporter,* to determine whether the proposed evidence is admissible under paragraph (b) of this rule. The court shall determine what evidence is admissible and shall accordingly limit the questioning. The defendant shall not go outside these limits or refer to any evidence ruled inadmissible in camera without prior approval of the court without the presence of the jury.[12]

The court of appeals's interpretation of Rule 412 is based, in part, on the language of its federal counterpart.[13] The court of appeals observed that the federal rule explicitly confers on the parties a right to participate in the *in camera* hearing and reasoned that the same was true of the Texas rule because the state rules of evi-

---

**7.** *Id.*

**8.** *Id.* at 836.

**9.** *Id.* at 836–837. The correctness of the court of appeals's ultimate holding with regard to the admissibility of the evidence is not before us.

**10.** *Id.* at 837–839.

**11.** Appellant's second ground, which we refused, contended that appellant's pending petition for discretionary review (later dismissed) deprived the trial court of jurisdiction to proceed with the retrospective hearing.

**12.** Tex.R. Evid. 412(c)(bold in original, italics added).

**13.** *LaPointe,* 166 S.W.3d at 293–294.

dence are patterned after the federal rules.[14] The State points out that, unlike the federal rule, the state rule contains no explicit direction to include the parties in the *in camera* hearing and argues that the textual difference between the federal and state rules calls for a divergent interpretation.

But both arguments flow from a faulty premise: the assumption that Texas's Rule 412 was patterned after its federal counterpart. Federal Rule 412 was not a part of the Federal Rules of Evidence when those rules were first enacted. Rather, it was added by Congress in 1978.[15] Texas had enacted its own "rape shield" statute three years earlier, in 1975.[16] That statute included what was clearly the precursor to Rule 412(c), with nearly identical wording.[17] Because Rule 412(c) was *not* patterned after its federal counterpart, a comparison of the wording is, at best, of limited value.

The difference between the federal and state rules aside, the State contends that the absence of explicit direction in the Texas rule to include the parties in the *in camera* hearing is significant. The State observes contrasting language in Texas Rule of Evidence 508 that requires the parties to be excluded from an *in camera* proceeding.[18] The court of appeals cited this provision in support of its holding,[19] and indeed, it could be argued that, if this Court wished to exclude the parties from a Rule 412 *in camera* hearing, we could have explicitly said so. The State contends, however, that Rule 412's silence indicates an intent to confer *discretion* upon the trial court in determining whether to admit the parties to the hearing while Rule 508 *mandates* that the parties be excluded. But there is another difference between Rule 412 and Rule 508: the *in camera* procedure in Rule 412 is referred to as a "hearing." Hearings are ordinarily adversarial. There are many situations in which an *in camera* procedure is clearly intended to take place without the parties, but typically that procedure is referred to as an *in camera* "inspection," "review," "showing," "determination" or, in the case of Rule 508, "disclosure."[20] Rule 412 aside, other situations in which the *in camera* procedure is specified as a "hearing" appear to contemplate the attendance of the parties.[21] And

---

**14.** *Id.* (citing Fed.R.Evid. 412(c)(2)("At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence")).

**15.** P.L. 95–540, § 2(a), Oct. 28, 1978, 92 Stat. 2046.

**16.** Former Tex. Pen.Code § 21.13; Acts 1975, 64th Leg., ch. 203, § 3.

**17.** Former § 21.13(b). Other than minor, nonsubstantive variations in wording, the only difference between the modern Texas rule and its predecessor appears to be that the modern rule embraces "documentary evidence" in addition to testimony.

**18.** Tex.R. Evid. 508(c)(3).

**19.** *LaPointe,* 166 S.W.3d at 294.

**20.** *See* Tex Civ Prac. & Rem.Code § 154.073(e)("determine")(confidentiality of certain records and communications); Tex. Fam.Code § 261.201(b)(3)("review")(confidentiality and disclosure of information); Tex. Fin.Code § 59.006(d)("inspection")(discovery of customer records at a financial institution); Tex. Gov't Code § 414.008(c)("inspection")(crime stoppers tips); Tex. Health & Safety Code § 773.092(d)("determination")(confidential medical information); *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986)("inspection," "review")(documents allegedly protected by attorney-client or work product privilege); Rule 508(c)(3).

**21.** Tex. Civ. Prac. & Rem.Code § 172.112 ("hearing," "meeting")(arbitration); Tex. Hum. Res. Code § 36.107(c)("hearing")(settlement with defendant in a medicaid fraud suit).

in the child-custody arena, one statute explicitly grants the trial judge *discretion* to determine whether to allow a party in an "in chambers" interview with the child.[22] In view of these things, we do not find the State's contention regarding Rule 412's language to be particularly persuasive.

What we do find persuasive, however, is this Court's interpretation of the precursor statute, § 21.13. In *Allen v. State,* we upheld the constitutionality of this provision against a Confrontation Clause challenge.[23] In doing so, we discussed a North Carolina decision, *State v. Fortney,* which upheld its own rape-shield provision.[24] We quoted extensively from the *Fortney* opinion's language, which included a statement that past sexual history could be litigated at "an in camera hearing where opposing counsel may present evidence, cross-examine witnesses, and generally attempt to discern the relevance of proffered testimony in the crucible of an adversarial proceeding away from the jury."[25] We commented that, while the North Carolina statute "is not totally like § 21.13, it is similar in many respects and the language in *Fortney* is here instructive."[26] After discussing *Fortney,* we further stressed the importance of balancing the victim's privacy interests with the confrontation right of the defendant by having the trial court hold a hearing that gives the defendant the opportunity to demonstrate the admissibility of the evidence:

The constitutional right to confront adverse witnesses is fundamental and is of such importance that a State's interest in protecting a certain class of witnesses from embarrassment must fall before the right of confrontation and cross-examination. Thus a statute that purports to prohibit completely the introduction of the victim's consensual sexual activity with persons other than the defendant is unconstitutional unless given a judicial gloss requiring a hearing out of the jury's presence so that the defendant, upon motion, may be given an opportunity to demonstrate that due process requires the admission of such evidence because probative value in the context of that particular case outweighs its prejudicial effect on the prosecutrix.[27]

In making these comments, we cited the New Hampshire case of *State v. Howard.*[28] A review of *Howard* reveals that our comments were a close paraphrase of the language in that case.[29] The *Howard* opinion went on to more fully describe the procedure to be followed.[30] The Supreme Court of New Hampshire explained that the victim's right to privacy was protected "at least to the extent that hearings held on the admissibility of the victim's prior sexual activity may, upon request of the victim and in the exercise of sound discretion by the trial justice, be closed to those *not party to the proceeding.* Such pretrial procedures enable the court to balance and

---

22. Tex. Fam.Code § 153.009(e)(court "may" permit party to be present). *See also In re Chu,* 134 S.W.3d 459, 467 (Tex.App.-Waco 2004)(referring to an "in camera" interview with the child); *Patterson v. Brist,* 2006 Tex. App. LEXIS 9281, *1, 2006 WL 3030225, at *2, —— S.W.3d ——, —— (Tex.App.-Houston [1st Dist.] 2006, pet. for review filed)(same).

23. 700 S.W.2d 924, 932 (Tex.Crim.App.1985.)

24. *Id.* at 930–931.

25. *Id.* at 931 (quoting *State v. Fortney,* 301 N.C. 31, 269 S.E.2d 110 (N.C.1980)).

26. *Id.*

27. *Id.* at 932.

28. *Id.*

29. *See Howard,* 121 N.H. 53, 58–59, 426 A.2d 457, 460–461 (1981).

30. *Id.* at 59, 426 A.2d at 461.

safeguard the rights of all the parties as applied to the facts of a particular case and avoid unnecessary prejudice to either the victim or the accused."[31] From the comments in *Allen*, and its reliance on *Fortney* and *Howard*, we conclude that the *Allen* decision construed § 21.13 narrowly to avoid a constitutional violation and that, under this narrowing construction, the trial court was empowered to exclude spectators, but not the parties, from the *in camera* admissibility hearing.[32]

Because Rule 412 essentially lifted the pertinent language from § 21.13, *Allen's* interpretation of the statute logically applies to the rule as well. Moreover, *Allen* was decided just two weeks before the adoption of the Texas Rules of Criminal Evidence, of which Rule 412 was a part, and the Court even mentioned the proposed rules elsewhere in the opinion.[33] Given those circumstances, we believe this result was likely the Court's intent in patterning Rule 412(c) on the statutory language.[34]

The State also argues that the policy interest behind Rule 412 of protecting the victim's privacy requires interpreting the rule to allow the trial court to exclude the defendant and his attorney from the hearing. But, as we recognized in *Allen*, the victim's privacy interest must be balanced against the defendant's right to confrontation. Rule 412 balances those interests by closing the hearing to *spectators*, so that only a minimum number of people—the witness, the parties and their attorneys, the judge, and the court reporter—are privy to the information revealed.

We conclude that the *in camera* proceeding contemplated by Rule 412 is an adversarial hearing at which the parties are present and the attorneys are permitted to question witnesses. We overrule the State's third and fourth grounds for review. Given our disposition of those grounds, we need not reach the State's first two grounds relating to the preservation of constitutional error, and those are dismissed.

## B. The proper remedy

Texas Rule of Appellate Procedure 44.4 provides:

*Remediable Error of the Trial Court.*

(a) *Generally.* A court of appeals must not affirm or reverse a judgment or dismiss an appeal if:

(1) the trial court's erroneous action or failure or refusal to act prevents the

---

**31.** *Id.* (emphasis added).

**32.** The State criticizes *Allen's* reliance upon *Fortney* on the ground that the North Carolina statute explicitly provided the right to an adversarial *in camera* hearing. But the State does not address *Allen's* reliance upon *Howard*, a case decided under a statute that made no reference to a hearing at all. *See Howard*, 121 N.H. at 57, 426 A.2d at 459 (quoting RSA 632A:6). As the above discussion shows, the *Allen* court seemed to be aware that there were differences between the statutes in North Carolina and Texas but was drawing upon general principles in fashioning what it considered to be an appropriate narrowing construction for the Texas provision.

**33.** *Allen* was decided on December 4, 1985, and the Rules of Criminal Evidence were adopted on December 18, 1985. For citation to proposed Rule 412, *see* 700 S.W.2d at 928 n. 3, 930 n. 5.

**34.** § 21.13 was later renumbered to § 22.065. Acts 1983, 68th Leg., p. 5315, ch. 977, § 4. Pursuant to legislative authorization, § 22.065 was repealed by the Texas Rules of Criminal Evidence. Acts 1985, 69th Leg., ch. 685, § 9(b); former Tex.Rev.Civ. Stat. art. 1811f, § 9(b)(1). Under the repealer statute, this Court was authorized to create a rule that differed from the statutory provision. *State v. Hardy*, 963 S.W.2d 516, 520–523 (Tex.Crim. App.1997).

proper presentation of a case to the court of appeals; and

(2) the trial court can correct its action or failure to act.

(b) *Court of appeals direction if error remediable.* If the circumstances described in (a) exist, the court of appeals must direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous action or failure to act had not occurred.[35]

Under this rule, if a trial court's error prevents the proper presentation of the case to the appellate court and that error can be remedied (without requiring an entire new trial or new punishment hearing), then the appellate court must direct the trial court to remedy the error so that the appellate court will be in a position to evaluate the appeal properly. We have applied this rule to a trial court's refusal to permit a defendant to make an offer of proof,[36] a trial court's failure to conduct a proper *Batson* hearing,[37] and a trial court's failure to make findings of fact that it was required by law to make.[38]

Appellant attempts to distinguish his case from those cases by claiming that the present case involves the denial of counsel at a critical stage of trial. In making this claim, he relies upon several cases that hold that the complete denial of counsel at a critical stage of trial results in a presumption of prejudice.[39] We need not address whether the trial court's conduct in the present case constituted the "complete denial of counsel at a critical stage of the proceedings," however, because the principle appellant recites is simply inapplicable. There is a difference between saying that the prejudice suffered warrants some sort of remedy and saying what *kind* of remedy must be afforded. For example, a complete denial of counsel that occurs only at the punishment proceedings would be presumed prejudicial, but that presumption does not mean the defendant would be entitled to an entire new trial (i.e. on both guilt and punishment). Because the scope of the prejudice was clearly limited to the punishment phase, the defendant in this hypothetical would be entitled only to a new punishment hearing. Likewise, when the trial court errs in refusing to permit the defendant to fully litigate the admissibility of a particular type of evidence, the scope of the prejudice flowing from such an error is limited. That the defendant was denied the ability to properly litigate admissibility does not mean that the trial court's admissibility determination was incorrect. What it does mean is that the appellate court may not be able to intelligently determine the correctness of the trial court's admissibility determination. The solution, then, is to afford the defendant the opportunity to perfect the record, which then enables the appellate court to review the admissibility issue properly.

Appellant also relies upon state cases that hold that the supplementation rules cannot be used to replay a hearing or to create a record that was never made.[40]

---

35. Tex.R.App. P. 44.4.

36. *Spence v. State,* 758 S.W.2d 597, 599–600 (Tex.Crim.App.1988).

37. *See Hutchinson v. State,* 86 S.W.3d 636, 638 n. 1 (Tex.Crim.App.2002)(citing cases).

38. *See id.* (citing cases).

39. *See e.g. United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

40. *Ramirez v. State,* 104 S.W.3d 549 (Tex. Crim.App.2003); *Hutchinson,* 86 S.W.3d 636; *Solomon v. State,* 49 S.W.3d 356 (Tex.Crim. App.2001); *Berry v. State,* 995 S.W.2d 699 (Tex.Crim.App.1999).

He contends that *Hutchinson* stands for the proposition that a party cannot "replay" a hearing that was already held in order to "fix" the hearing. He further cites that *Ramirez, Solomon,* and *Berry* for the proposition that an appellate court cannot use the rules of appellate procedure to create a new record.

Appellant fails to appreciate the difference between the pertinent provisions in Rule 34, which relate to supplementation, and those in Rule 44, which provide a remedy for error. Appellant is correct that the supplementation rules, Rules 34.5(c) and 34.6(d), cannot be used to create a new record.[41] Those rules exist to allow appellate courts to supplement the appellate record with matters that were part of the trial record but, for whatever reason, have not been forwarded to the appellate court.[42] Rule 44.4, by contrast, is *designed* to effect the creation of a new record. When a trial court has erroneously withheld information necessary to evaluate a defendant's claim on appeal (e.g. failure to file required findings of fact) or has prevented the defendant from submitting information necessary to evaluate his claim (e.g. refusing to permit an offer of proof), the appellate court is directed to step in and order the trial court to correct the situation. The key to Rule 44.4 is that

there must be an error that the appellate court can correct.[43] And if the error in question is subject to the usual rules of procedural default, then it must have been preserved by objection.[44] The supplementation rules found in Rule 34 do not require any showing of error, but that is because their purpose is much more limited than the remedial function of Rule 44.4.

Appellant reads the state "supplementation" cases too broadly. All of the cases upon which he relies trace their lineage to *Berry.*[45] But that case recognized the distinction between correcting an error and trying to inject matters into the record where no error was present. With regard to findings of fact, we explained that an appellate court can order a trial court to make findings of fact when the law imposes an affirmative duty to do so, but an appellate court cannot order such findings when there is no legal requirement.[46] *Berry* in turn relied upon *Williams.*[47] In *Williams,* this Court expressly added a caveat to its holding that the supplementation rules cannot be used to create a new record (involving in that case the court reporter's failure to record certain proceedings):

The foregoing discussion does not mean that a defendant can never obtain relief if the court reporter fails to record cer-

---

**41.** *Ramirez,* 104 S.W.3d at 550 (citing *Berry* ); *Solomon,* 49 S.W.3d at 365 (citing *Berry); Berry,* 995 S.W.2d at 702 and 702 n. 5 (citing *Williams v. State,* 937 S.W.2d 479, 487 (Tex. Crim.App.1996)).

**42.** *Berry,* 995 S.W.2d at 702 n. 5.

**43.** *See id.* at 701–702.

**44.** *See Williams,* 937 S.W.2d at 487. Of course, any failure to preserve error would be held *against* the appealing party and would likely be fatal to his entire claim.

**45.** *Hutchinson,* 86 S.W.3d at 637; cases cited in footnote 41.

**46.** *Berry,* 995 S.W.2d at 701–702. Although *Berry* refers to requiring findings as an action that may be authorized by Rule 34.5(c)(2), we note that that subsection refers only to the *clerk's* duty to forward findings that are required by law: "If the appellate court . . . orders the trial court to prepare and file findings of fact and conclusions of law as required by law . . . the trial court clerk must prepare, certify, and file in the appellate court a supplemental clerk's record containing those findings and conclusions." Rule 34.5(c)(2). The source of the *appellate court's* authority to order the findings is Rule 44.4.

**47.** *See* footnote 41.

tain proceedings. But, to preserve error on such a claim, a defendant must object before the trial court to the court reporter's failure to do so.[48]

In other words, the defendant must show error upon which an appellate court can act, which error can then be remedied by an order under Rule 44.4.[49]

Here, the court of appeals determined that appellant was deprived of his right to participate in the rule 412 hearing. The purpose of allowing defense participation in the hearing is to give the defendant the opportunity to substantiate his claim that the victim's prior sexual history is admissible. The proper remedy was to abate the appeal and remand the case to the trial court to afford the defendant an adversarial hearing in which he would have an opportunity to make that showing. Once that was done, the appellate court would then be in a position to intelligently review the issue of whether the prior sexual history evidence was admissible. The court of appeals followed this procedure in the present case, and it was entirely correct in doing so. Appellant's first ground for review is overruled.

### C. The hearing

■■■■ Finally, we address appellant's contention regarding how the hearing was conducted. Defense counsel's questions regarding child custody, the victim's alcohol use, and whether the victim was taking medication for bipolar disorder were not inquiries into the victim's past sexual history and did not fall within the trial court's order at trial prohibiting questioning by defense counsel. Indeed, some evidence relating to these topics was elicited in front of the jury or in an offer of proof. Those questions therefore fell outside the scope of the court of appeals's remand order, and the trial court did not err to exclude them. Nor do we see any error in refusing to permit the victim to read from documents that had already been included in the record. That leaves counsel's attempt to question Nurse Gann regarding any link between bipolar disorder and sexual activity. It is not clear that such a question falls within the scope of Rule 412. Assuming *arguendo* that it does, appellant failed to preserve error with regard to that topic. Appellant never told the trial court at trial that he wished to ask Nurse Gann such a question, and it at least seems questionable whether she would even be qualified to give an answer.[50] Finally, we agree with the court of appeals that appellant failed to preserve any claim with regard to the request for continuance and the request to recall Nurse Gann because appellant failed to submit his proposed questions.[51] We overrule appellant's third ground for review.

### III. CONCLUSION

We hold that the *in camera* hearing required by Rule 412 is an adversarial

---

**48.** 937 S.W.2d at 487.

**49.** Thus, we disagree with appellant's contention that *Hutchinson* stands for the proposition that a party cannot "replay" a hearing that was already held in order to "fix" the hearing. In *Hutchinson,* the defendant made a prima face case of discrimination as to five veniremembers, but a *Batson* hearing was held on only four of them. 86 S.W.3d at 639. A "replay" of the hearing with regard to the first four veniremembers was improper, not because "replays" are invariably improper, but because there was no showing that there was any error—with regard to those four veniremembers—in the conduct of the original hearing.

**50.** The record shows that appellant was well aware at trial of the victim's bipolar disorder and her alleged involvement with "multiple sex partners." So he cannot claim that the proffered question resulted from unexpected developments at the retrospective hearing.

**51.** Tex.R. Evid. 103(a)(2); Tex.R.App. P. 33.2.

hearing where the parties are present and the attorneys are afforded the opportunity to question witnesses and present evidence. We further hold that the remedy for a trial court's failure to follow this requirement is to abate the appeal and remand the case to the trial court to conduct (retrospectively) a proper hearing. Finally, we hold that the trial court conducted a proper hearing on remand. Consequently, we affirm the judgment of the court of appeals.