

**NUMBER 13-13-00479-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**STATE OF TEXAS,**                                                                         **Appellant,**

**v.**

**LARRY GREEN,**                                                                         **Appellee.**

### On appeal from the 319th District Court
### of Nueces County, Texas.

# ORDER OF ABATEMENT

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Order Per Curiam

Appellant, the State of Texas, has filed a motion requesting that this Court abate this case and order the trial court to the enter findings of fact and conclusions of law in support of its order granting appellee, Larry Green's, motion to suppress. For the reasons set forth below, we grant the State's motion.

## I. BACKGROUND

On August 2, 2013, the trial court held an evidentiary hearing on appellee's motion to suppress evidence obtained by police officers in a warrantless search and seizure. The State called four witnesses to testify about what happened. Two officers with the Corpus Christi Police Department searched a garage-type, wooden shed owned by appellee's parents and seized evidence that they discovered in the shed.[1] The State sought to prove that the search and seizure were conducted lawfully based on the effective consent of appellee's parents, who according to the State, had actual authority to consent to the search and seizure. In the alternative, the State sought to prove that the police officers acted in good faith reliance on the apparent authority of appellee's parents to grant effective consent. Additionally, the State presented testimony to prove that the police officers observed various items, including marijuana and other contraband, in plain sight upon entering the garage-type shed after obtaining oral consent from appellee's parents. At that point, according to the State and its witnesses, the police officers exited the shed and requested and obtained from appellee's father a written and signed consent form, which according to the State, rendered the search and seizure lawful.

In support of his motion to suppress, appellee testified that he rented the shed from his parents, that he had exclusive use and control of the premises, and that he was occupying the premises as his personal residence. According to appellee, he protested

---

[1] The police officers arrived at the premises to conduct a sex offender registration check in which their main purpose was to confirm residency requirements and specifically to confirm appellee's residency at his last known address. Appellee has five prior convictions for possession of child pornography and a prior conviction for aggravated assault with a deadly weapon on a peace officer.

when the police officers entered the premises and began to search for evidence based on the written consent form signed by his stepfather. Appellee testified that he did not consent to the search or seizure. Appellee also testified that the marijuana and other contraband were not in plain sight when the police officers entered the shed.

After the testimony was concluded, the trial court heard the parties' arguments. The trial court asked the State a number of questions primarily focused on whether the police officers had valid third party consent from appellee's parents to search the garage-type shed, where they found appellee concealed and observed the following items purportedly in plain view: a plastic bag containing an unspecified amount of marijuana, drug paraphernalia, syringes, cotton balls, and sundry items of a sexual nature, including a DVD playing a pornographic movie, stained children's clothing and underwear, a vibrating child's doll head, a lubricant attachment, doll parts located inside used children's underwear, magazines clippings of children and infants, and a cellular phone located within a clear plastic bag, which was illuminated to show two nude small children bathing.

From the transcript of the hearing, it is clear that the trial court was concerned with whether the police officers had lawfully conducted the warrantless search and seizure. The trial court asked the State's attorney, "Why wouldn't they need a warrant to go in there?" The State's attorney responded that appellee's stepfather had granted the police officers valid consent to search both the home and the shed. The trial court expressed concern that the shed was not attached to the home and had a different address posted on it.

The trial court also expressed concern about the validity of the consent purportedly granted by appellee's parents. The trial court commented, "But the other testimony regarding the parents, it seems to indicate that they didn't give the consent, even though they signed this [referring to State's Exhibit 1, the consent form that appellee's father had signed]. I understand, there are some inconsistencies." The State then argued that even if appellee's parents lacked actual authority to grant consent or the consent was not granted voluntarily, the police officers acted reasonably in relying on the apparent consent in good faith.

Next, the trial court questioned the State's attorney about whether the police officers got "the consent after they started going through [things] or before." The State's attorney responded that the police officers' testimony was that they obtained oral consent before entering the shed. "However, once they found . . . [appellee] and located several of these [aforementioned] items, they came back out and then asked for their written consent." The trial court then summed up the State's account of what happened, "[So] . . . they went in, when they started finding things they went out and thought better follow up with a written consent?" The prosecution agreed. The following exchange then took place:

THE COURT: Is that permissible?

[State's attorney]: Absolutely, Your Honor. The oral consent is completely valid. However, to be digging around through things [, the police officers] probably needed a consent form.

THE COURT: See that is why I am asking. They had right to be here because the sexual registration, they were there. They got oral consent to be where they were. Then they went out to the other part, which was not attached to the house, which had a number on it, and they went in, whether

4

you believe it was pushed, they went through a hole, whatever it was, they got in and started seeing things and that's when they got a written consent; is that what you are saying?

[State's attorney]: Yes, Your Honor.

THE COURT: And that takes care of all the problems, maybe?

[State's attorney]: Well, yes. Because the Defendant's father gave them consent, written consent and oral consent to search, and those officers relied on it on good faith. And again, the exclusionary rule is to avoid police misconduct. If they cannot rely on consent given to . . . [them] by homeowners, then what is the consent law for?

THE COURT: No, I agree. The oral consent. But when they went in and found the other things, they saw they had to get a written consent.

The State agreed. Based on the foregoing, the State asked the trial court to deny the motion to suppress.

Next, defense counsel argued as follows to the trial court:

[Defense counsel]: So what we have is, we have a situation, this is the type of situation the case law talks about. When you have two passengers in a car or two people in a residence in a home, like a husband and a wife, and the husband says, "yeah, come search" and the wife says, "no, you can't search." That, "no", is a negative, that eliminates the rights of the officer to rely on the consent.

In this particular case, counsel is saying that the officer had the right to rely on the father's statement to go and search. He didn't say he said "go out there and search", he says, "you can go out there and look, that's where he works'." Whether they want to believe that that meant to go in and search the garage, I don't know. Whether that means force the doors open, I don't know. To an officer maybe that's their go ahead to do that. But, once they got . . . [appellee] out of that corridor, out of that little room, he says, "Don't go through my things." So if they had joint occupancy, he said, "Stop, don't do it"; they don't have a consent. What happens, they don't have a written consent at that time either, Judge. Then the officer says I need or the lieutenant decides, hey we better get a search warrant or I mean a consent to search.

THE COURT: That's why I asked.

5

[Defense counsel]: That's right.

So then they go back to the house and they need the father and they say, we need you to sign this document so we could go in there and legally search, they've already searched; they already found the dope; they've already made the arrest; so they don't have a good faith standing to rely on the consent of the father. The father did not and there is no written, consent to search the house. The father tells you they searched the house, "Did I stop them? No. You know, I am suppose[d] to respect the police, I didn't stop them. They went through the doors in the house, they weren't satisfied that he was staying there."

Defense counsel then focused on the evidence that appellee had exclusive use of the shed and argued that appellee's parents therefore could not give the police officers valid third party consent. According to defense counsel, "the only issue that would allow the officers to search in this particular case, is if the officer[s] in good faith, relied on the father's consent to search, and I don't think you got that from the evidence in this case."

The State's attorney responded as follows:

Your Honor, this Defendant intends to make a mockery of this Court. He got up on the stand, he lied, and if you are basing -- if you're challenging the credibility of the officers, a reverend, a chaplain, and a woman with 14 years [of] experience versus a man who is a sex offender, with multiple felonies, and who clearly lies, and misrepresents to the Court; you are basically going at odds with two versions of what happened. The officers said he never uttered a peep, he didn't say "Don't go through my things." He didn't say anything like that. They relied on the father's consent form and they relied on the parents' consent to search, and there's nothing in the record that make the officers liars and they have absolutely nothing to gain from this case or to lose. *Currently, he is right, it does come down to whether or not he challenged the stop, the search, the actual, if he actually spoke up about the search.* The officer said he didn't say a word. And now he's saying that he told his mom, "Tell them to stop going through my things", we didn't hear any of that from the mom.

Your Honor, it's pretty obvious what's going on, this is a ruse, this is a way to avoid being punished on a failure to register. Again, I go back to standing, because this is a possession of marijuana case. We are here on

6

a failure to register, this evidence is for punishment, it's not for the introduction in guilt/innocence.

Your Honor, his parents came out here and said they've never gone back there, they don't use that garage ever, it is part of their property, they pay taxes on it, they paid off the mortgage, but they've never gone back there? How do the officers know to push a little on the door if the Defendant's father hadn't told them how do it? *It really just comes down to who you believe; the officers, with years and years of experience, the reverend, or the sex offender.*

(emphasis added).

The trial court then ruled from the bench as follows:

Well, I'm not sure if it comes down to who is lying and who is not lying, that often happens in trials, I know. I'm not sure I buy everything the Defendant is selling. But the Court is experienced enough in these matters to know that this comes down to, frankly, it's a legal issue. It has nothing to [d]o with the officers or whether I like them or not, I'm sure they're fine gentlemen and ladies and they are doing what they are suppose[d] to be doing. But based on the case law, as I understand it, the Court is going to grant the motion to suppress. So that's where we are. It has nothing to do with anything that I granted this motion to suppress, that just leaves it as a registration case, and I assure you that's not going away.

On August 21, 2013, the trial court entered a written order granting appellee's motion to suppress. The order did not state the basis for the trial court's ruling. The State filed its notice of appeal on September 4, 2013. On November 13, 2013, the State filed its proposed findings of fact and conclusions of law. The record does not reflect any action by the trial court on the State's proposed findings and conclusions. The record also does not reflect that the State presented its proposed findings and conclusions to the trial court or that it did so timely.

On December 27, 2013, the State filed its appellate brief in this cause. On appeal, the State argues that appellee's father had actual authority to consent to the search of his

7

property, which included the shed, and that the police officers reasonably believed that appellee's father had apparent authority to consent to the search. The State argues that once inside the shed, the police officers observed several seized items that were in plain view, which the State explains, is a well cited exception to the search warrant requirement. Based on the foregoing, the State asserts that the trial court erred in granting appellee's motion to suppress and requests that this Court vacate the trial court's suppression order. In the alternative, the State requests that the case be abated and remanded for findings of fact and conclusions of law.

On March 16, 2014, appellee filed his appellate brief. Appellee argues that "[t]he trial court was of the opinion that this was a legal issue that would not come down to who is lying or not." Appellee argues further that he had a reasonable expectation of privacy in his leasehold (i.e., the shed) and therefore has standing to contest the warrantless search and seizure conducted in his private leasehold. According to appellee, his stepfather did not have actual authority to consent to a police search of appellee's private leasehold. Appellee also argues that the State cannot rely on its alternative argument that appellee's father had apparent authority to consent because it did not raise that issue before the trial court and because the police officers' remedial actions do not support that theory. Finally, appellee argues that the State cannot rely on the plain view doctrine because the police officers did not discover anything in "plain view" until after they had entered and were inside the shed.

On May 5, 2014, the State filed a motion asking this Court to abate this case and remand it to the trial court for the entry of findings of fact and conclusions of law in support

8

of the trial court's suppression order. In the motion, the State contends that upon its request as the losing party in a motion to suppress proceeding, it is entitled to findings of fact and conclusions of law, as set forth in *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). According to the State, the *Cullen* requirement places no time limit on such a request.

On May 8, 2014, appellee filed his motion in opposition to the State's motion to abate and remand. Appellee argues that the State's request is not timely because it was not made within twenty days of the suppression order. Appellee requests that this appeal move forward and be decided based on the record before this Court.

## II. ANALYSIS

As set forth above, the State has requested that this Court abate the case and order the trial court to enter findings of fact and conclusions of law in support of its suppression order.

### A. Applicable Law & Standard of Review

"[F]actual findings are who did what, when, where, how, or why." *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008). "They also include credibility determinations." *Id*. "They do not include legal rulings on 'reasonable suspicion' or 'probable cause.'" *Id*.

Historically, "when the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Cullen*, 195 S.W.3d at 698. However, the Texas Court of Criminal Appeals

9

has observed that "[t]he refusal of trial courts to enter findings of fact when timely requested by the State leaves appellate courts with nothing to review except a one-word ruling and forces the courts of appeals to make assumptions about the trial court's ruling." *Id.* The Court has also observed, "[t]he ruling could be based on a mistake of law, on the trial court's disbelief of the testimony presented, or even on a clerical error." *Id.* "There is the possibility that we are basing our entire appellate review on the wrong word being circled." *Id.* Based on the foregoing, the Court concluded in *Cullen* that "the proper solution to this problem is to require the trial courts to enter findings of fact and conclusions of law when ruling on a motion to suppress evidence." *Id.*

In *Cullen*, the Court noted that "Rule 44.4 [of the Texas Rules of Appellate Procedure] authorizes the court of appeals to remand the case to the trial court so that the court of appeals is not forced to infer facts from an unexplained ruling." *Id.* (citing TEX. R. APP. P. 44.4). The Court also noted that "the efficient administration of justice will be served by a requirement that trial judges respond to a request for findings of fact and conclusions of law." *Id.* at 699. In *Cullen*, the Court articulated the following rule:

> Effective from the date of this opinion, the requirement is: upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings. By "essential findings," we mean that the trial court must make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts.

*Id.* In *Cullen*, the Court also noted that "the trial court has 20 days from the date of its ruling in which to file findings of fact if it has not already made oral findings on the record." *Id.* at 699–700. This suggests that the losing party will forfeit its right to findings of fact and conclusions of law if it fails to request them within twenty days of date that the trial

10

court rules on the motion to suppress; however, subsequent decisions have clarified that this is not the case.

For instance, in *State v. Elias*, the Court held that even if the losing party does not request findings of fact and conclusions of law, "the trial court, once having taken it upon itself to enter specific findings and conclusions *sua sponte*, . . . assumed an obligation to make findings and conclusions that were adequate and complete, covering every potentially dispositive issue . . . ." *State v. Elias*, 339 S.W.3d 667, 676 (Tex. Crim. App. 2011). Then, in *State v. Saenz,* the Court held that "an appellate court must abate for additional findings of fact when a party has requested findings of fact and the findings that are made by a trial court are so incomplete that an appellate court is unable to make a legal determination." *State v. Saenz*, 411 S.W.3d 488, 495 (Tex. Crim. App. 2013). Accordingly, "reviewing courts need not presume, assume, or guess at what historical facts a trial judge actually found when making a ruling in a motion to suppress hearing." *State v. Mendoza*, 365 S.W.3d 666, 671 (Tex. Crim. App. 2012). Our decisions must be "based on the reality of what happened rather than on assumptions that may be entirely fictitious." *Id.* (quotation omitted).

## B. Discussion

Despite the new requirement that trial courts must enter findings of fact and conclusions of law in support of their suppression rulings upon the timely request of the losing party, the parties dispute whether *Cullen* and its progeny require this Court to abate and remand this case to the trial court for it to enter findings and conclusions. For the

11

reasons set forth below, we agree in part with the positions advanced by both sides.  We begin by noting the shortcomings in the State's position.

First, the State has not identified any disputed issue of fact that would be dispositive to the appeal.   *State v. Weaver*, 349 S.W.3d 521, 528 n.34 (Tex. Crim. App. 2011) (declining to remand the case to the trial court "to enter a specific finding on a disputed fact that is dispositive to the appeal" after concluding "that, based on the record, [the fact] is not in dispute").   In support of its motion, the State merely asserts that under *Cullen*, it is entitled to findings of fact and conclusions of law upon its request as the losing party and that there is no requirement that the request be made timely.   Other than that, the State has not explained why the relief it requests is necessary and appropriate in this case.

Second, in decisions issued after *Cullen*, the Texas Court of Criminal Appeals has continued to consider whether the losing party "*timely* requested findings and conclusions from the trial court."   *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006) (stating that "when the trial court makes no explicit fact findings and neither party has *timely* requested findings and conclusions from the trial court . . . , the appellate court implies the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light most favorable to the trial court's ruling) supports these implied fact findings") (emphasis added).   In this case, the State waited nearly three months after the trial court entered its suppression order before it submitted its proposed findings of fact and conclusions of law.   In *Cullen*, the Texas Court of Criminal Appeals stated that after ruling on a motion to suppress, the trial court has twenty days to enter findings and

12

conclusions. *Cullen*, 195 S.W.3d at 699–700 ("[T]he trial court has 20 days from the date of its ruling in which to file findings of fact if it has not already made oral findings on the record."). Here, the State's proposed findings and conclusions were filed well outside the twenty day window.

Third, the Texas Court of Criminal Appeals has also stated that "a request [for findings of fact and conclusions of law] is best accomplished by a formal motion for findings of fact and conclusions of law, made either on the record in open court or by written motion and timely presentation to the trial court." *State v. Oages*, 210 S.W.3d 643, 644 n.3 (Tex. Crim. App. 2006). In this case, the State filed its proposed findings and conclusions, but it did not file a formal motion requesting that the trial court enter findings and conclusions. In addition, there is nothing in the record to indicate that the State ever presented its proposed findings and conclusions to the trial court or that it did so timely.

Fourth, the Texas Court of Criminal Appeals has also explained that "[o]n its face, Rule 44.4 authorizes a remand to the trial court only when the record is inadequate to present a claim due to some 'erroneous action or failure or refusal to act' on the part of the trial court, as opposed to one of the parties." *Davis v. State*, 345 S.W.3d 71, 75 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.4(a)(1)). Thus, "a Rule 44.4 remand to allow the trial court to enter findings of fact and conclusions of law [is appropriate] when . . . [the trial court] erroneously failed to do so, upon request of the losing party . . . ." *Id.* To the extent that the State's proposed findings and conclusions operated as a request for the trial court to enter findings and conclusions in support of its suppression order, the

13

State's request was not made within the twenty day window set forth in *Cullen*. *Cullen*, 195 S.W.3d at 699–700. Therefore, it could be argued that the trial court did not err in failing or refusing to act on the request, which if true, would mean that the remedial purpose of Rule 44.4 has not been triggered in this case and that the State is therefore not entitled to the relief it requests in its motion to abate and remand. *See LaPointe v. State*, 225 S.W.3d 513, 522 (Tex. Crim. App. 2007) ("The key to Rule 44.4 is that there must be an error that the appellate court can correct . . . .").

Fifth and finally, there is the State's argument—albeit an inadequately briefed argument—that it was not required to make its request timely. We reject this argument because the State has cited no authority in support of it. Furthermore, the State's argument is inconsistent with *Cullen*, which suggests that the trial court has a twenty day window to enter requested findings and conclusions. *Cullen*, 195 S.W.3d at 699–700. Moreover, the State's argument is also inconsistent with decisions issued after *Cullen*, such as *Oages* and *Kelly*, in which the Texas Court of Criminal Appeals continued to consider whether there was a "timely" request. *Oages*, 210 S.W.3d at 644 n.3; *Kelly*, 204 S.W.3d at 819.

Despite the foregoing, however, we recognize the powerful thrust of *Cullen*'s mandate "insisting that the findings be expressed by the trial court when requested by the losing party." *Cullen*, 195 S.W.3d at 699. Again, under *Cullen*, "the requirement is . . . [that] upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings." *Id.* In this case, after the State lost on appellee's motion to suppress, it filed its proposed findings of fact and conclusions of law, thereby

14

triggering the trial court's duty under *Cullen* to enter its essential findings.   *See id.*

Furthermore, the trial court's failure to enter findings and conclusions upon the State's

request leaves this Court "with nothing to review except a one-word ruling," and unless

the omission is corrected by an appropriate order, this Court will be forced "to make

assumptions about the trial court's ruling."   *Id.* at 698.   The Texas Court of Criminal

Appeals has held "that courts of appeals should not be forced to make assumptions (or

outright guesses) about a trial court's ruling on a motion to suppress evidence."   *Id.*

Therefore, "Rule 44.4 authorizes the court of appeals to remand the case to the trial court

so that the court of appeals is not forced to infer facts from an unexplained ruling."   *Id.*

Additionally, Rule 43.6 states, "The court of appeals may make any other appropriate

order that the law and the nature of the case require."   TEX. R. APP. P. 43.6.   Again, the

law requires that "upon request by the losing party in a motion to suppress evidence, a

trial judge must enter findings of fact and conclusions of law so that the appellate courts

can better review the decision of the trial court without speculating about the reasons for

the trial court's decision."   *Castro v. State*, 227 S.W.3d 737, 743 (Tex. Crim. App. 2007).

Here, that was not done.   Therefore, we conclude that it is appropriate to grant the State's

motion.

In sum, we have concluded that the State has made a sufficient, though in our

view, minimalistic, effort to request findings of fact and conclusions of law from the trial

court pursuant to *Cullen.*   Although the State erroneously asserts that it was not required

to make its request timely, we have rejected that assertion because it is inconsistent with

*Cullen* and its progeny.   We hold that the State's request was timely because it was made

15

after the trial court's ruling on the motion to suppress, which "is interlocutory in nature" and "which a trial court may revisit at its discretion at any time," and because the State made its request before its appeal was submitted to this Court for final disposition. *Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012).

We note that other courts have denied relief similar to what the State requests in this case, even when it was undisputed that the State made a timely request. *See, e.g., State v. Froid*, 301 S.W.3d 449, 450–51 (Tex. App.—Fort Worth 2009, no pet.) (overruling the State's request to remand appeal for additional findings and conclusions because "the State voiced no objection to the adequacy of the trial court's findings of fact or the appropriateness of its conclusions of law in the trial court"). However, we believe that the fair and efficient administration of justice would be "well served to allow supplementation of the record with the findings of fact that appellant had requested." *Meekins v. State*, 340 S.W.3d 454, 465 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals has emphasized that "appellate courts should have the trial judge's findings of fact before disagreeing with that judge's ruling on a motion to suppress." *Id.*

In this case, it is unclear what the basis was for the trial court's ruling. At the hearing, the trial court hinted at one possible basis for its ruling when it asked the State, "Why wouldn't they need a warrant to go in there [into the shed]?" When the State invoked the doctrine of consent, the trial court expressed concern about the validity of the consent appellee's parents purportedly granted to the police officers, commenting, "But the other testimony regarding the parents, it seems to indicate that they didn't give the consent, even though they signed this [referring to State's Exhibit 1, the consent form that

16

appellee's father had signed].  I understand, there are some inconsistencies."  The trial court thus acknowledged that there were conflicts in the evidence regarding the issue of consent.

Also on the issue of consent, the trial court appears to have indicated its belief that written consent was required to search the shed by commenting that when the police officers went into the shed "and found the other things, they saw they had to get a written consent."  The State agreed with that proposition.  The State's attorney told the trial court that "to be digging around through things[, the police officers] probably needed a consent form."  The trial court asked whether the police officers obtained "the consent after they started going through [things] or before," indicating that there was a question regarding the timing and chronology of the events involving the search and seizure and the purported consent.  This was reinforced by defense counsel, who argued that the police officers obtained the written consent from appellee's stepfather after conducting the search and seizure:  "then they go back to the house and they need the father and they say, we need you to sign this document so we could go in there and legally search, they've already searched; they already found the dope; they've already made the arrest; so they don't have a good faith standing to rely on the consent of the father."  Again, there are issues of fact involving conflicts in the evidence that the finder of fact must resolve in the first instance based on the evidence presented at the hearing.

The trial court also called into question the validity and effectiveness of the written consent signed by appellee's father, commenting that it "takes care of all the problems,

17

maybe . . . ." Here, the trial court was clearly contemplating how the law should be applied to the facts of the case and questioned what the result would be.

In rebuttal, the State agreed with defense counsel that "it does come down to whether or not he challenged the stop, the search, the actual, if he actually spoke up about the search." The State's attorney reminded the trial court that "[t]he officer said he [referring to appellee] didn't say a word" and then pointed out that there was a conflict in the evidence because "now . . . [appellee is] saying that he told his mom, 'Tell them to stop going through my things . . . .'" The State's attorney told the trial court, "[W]e didn't hear any of that from the mom." The State's attorney emphasized that the case turned on a question of fact: "It really just comes down to who you believe; the officers, with years and years of experience, the reverend, or the sex offender."

Yet, the trial court said it was "not sure if it comes down to who is lying and who is not lying . . . ." The trial court also stated, "I'm not sure I buy everything the Defendant is selling," thus indicating that the court disbelieved some portion of appellee's testimony. However, it is unclear which portion of the testimony that was.

Finally, we recognize that the trial court stated that ultimately, "it's a legal issue." Although we agree that the lawfulness of the search and seizure is an issue of law, there are many questions regarding how the trial court reached its decision to grant the motion to suppress. For instance, what were the underlying historical facts? How did the trial court resolve the conflicts in evidence regarding those facts? What law did the trial court apply to the facts of the case? Which arguments did it accept? Which arguments did it reject? The questions could be phrased in a number of different ways, but ultimately,

18

the problem is that we do not have the trial court's "essential findings," as defined in *Cullen*. *Cullen*, 195 S.W.3d at 699.

At the conclusion of the hearing, the trial court stated that it was granting the motion to suppress "based on the case law," but which case law was that? Perhaps the trial court was referring to the decision of the United States Supreme Court in *Georgia v. Randolph*, 547 U.S. 103, 122–23 (2006), holding that the consent of one occupant is insufficient when another occupant is physically present and objects to the search. Or it could have been a reference to the decision of the Texas Court of Criminal Appeals in *Hubert v. State*, 312 S.W.3d 554, 556–57 (Tex. Crim. App. 2010), holding that a "grandfather had actual authority to consent to a search of the appellant's bedroom" in a "house they shared" after police officers arrived at the house, found the appellant on the porch, arrested him based on an arrest warrant, and placed him in their squad car. Of these two cases, both of which defense counsel provided to the trial court at the hearing on the motion to suppress, *Randolph* seems to be the more likely basis for the trial court's ruling. However, we are required to base our decision in this case on what actually happened, not on guesswork. To the extent that *Randolph* is relevant to the trial court's ruling, we note that the United States Supreme Court subsequently revisited the issue in *Fernandez v. California*, 134 S.Ct. 1126 (Feb. 25, 2014).

Again, it is possible that the trial court granted the motion to suppress after concluding that the purported consent by one or both of appellee's parents was not valid, but to review the ruling on this record, we would require guesswork and speculation about how and why the trial court reached such a conclusion. And even then, it is entirely

possible that the trial court could have had a completely different basis for its ruling that we simply have not considered or anticipated because the record is silent.

Under these circumstances, the more prudent course of action is to abate the case with instructions for the trial court to enter findings of fact and conclusions of law in support of its ruling on appellee's motion to suppress, as requested by the State.

### III. CONCLUSION

Accordingly, we GRANT the State's motion. The State has requested findings of fact and conclusions of law as the losing party in a motion to suppress proceeding. On this record, this Court has no basis to review the trial court's application of the law to the facts of the case. Therefore, we conclude that the fair and efficient administration of justice requires this Court to abate this case and order the trial court to state the essential findings for its ruling and to include them in a supplemental clerk's record to be filed with the Clerk of this Court within thirty days of the date of this order.

IT IS SO ORDERED.

PER CURIAM

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of May, 2014.