Francisco Javier LOPEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–93–313–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 8, 1994.

Mark Alexander, McAllen, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Rebecca Pool, Asst. Dist. Atty., Edinburg, for appellee.

Before GILBERTO HINOJOSA, FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

**OPINION**

YAÑEZ, Justice.

Appellant was indicted on three counts of aggravated robbery and three counts of burglary of a habitation. Appellant pled guilty to one count of aggravated robbery, and the trial court adjudged him guilty. It then ordered a presentence investigation. At a later date, the trial court assessed punishment at 16 years in prison. We abate the appeal.

By point of error three, appellant complains that the trial court erred by admitting into evidence an affidavit of his trial counsel at the hearing on his motion for new trial. Appellant complains that the trial court violated his confrontation rights under the Sixth Amendment to the U.S. Constitution and Article 1, Section 10 of the Texas Constitution by admitting the affidavit. We agree.

The record shows that the Honorable Jesus Rodriguez served as trial counsel to appellant and appellant's alleged co-defendant, David Meza. Appellant and Meza pleaded guilty and received their sentences at the same guilty-plea and sentencing hearings. The Honorable Mark Alexander represented appellant and Meza on their motions for new trial.

In his motion for new trial, appellant alleged that he was denied effective assistance of counsel at trial because he entered his plea on the advice of counsel who promised him that he would receive probation. During the new-trial hearing, the State offered trial counsel's affidavit into evidence. Before ruling on its admissibility, the trial court allowed appellant to call trial counsel as a witness. However, trial counsel pleaded the Fifth Amendment in response to appellant's questions concerning his representation of appellant. Appellant objected to the affidavit on the same grounds he raises on appeal. The trial court overruled the objection and admitted it into evidence. The affidavit stated, in relevant part:

I was retained to represent David Meza and Francisco Javier Lopez on or about October or November of 1992 to represent both of them on Aggravated Robbery and related charges. I met numerous times with both David Meza and Francisco Javier Lopez at the jail Every time I went to the jail to meet with David Meza and Javier Francisco Lopez I would discuss their case with them. I told both David Meza and Javier Francisco Lopez that the State of Texas had witnesses available to testify against each of them. I related to both defendants that I had been meeting with the State's Prosecuting Attorney numerous times and that we had a choice of going to trial before a jury or judge or pleading to the court. Right before the plea I and the Prosecuting Attorney met

with the judge in chambers. The judge made no promises but indicated he was considering 20 years pen time for David Meza and about 16 years pen time for Francisco Javier Lopez. I told both defendant [sic] that they were probably looking at 20 years but the judge could give them less. I never promised them that the judge would give them probation.

The Sixth Amendment to the U.S. Constitution provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." Similarly, Article 1, Section 10 of the Texas Constitution provides in part that "[i]n all criminal prosecutions the accused ... shall be confronted by the witness against him...." The U.S. Supreme Court has stated that the confrontation right includes the right to cross-examine witnesses. *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968).

In *Trevino v. State*,[1] the Court of Criminal Appeals held that a new-trial hearing is a "critical stage" of the proceedings at which an accused is entitled to representation by counsel under the Sixth Amendment to the U.S. Constitution and Article 1, Section 10 of the Texas Constitution. The court stated that a new-trial hearing is the only opportunity to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review. *Trevino*, 565 S.W.2d at 940. Thus, the importance of the new-trial hearing to both the State and the accused justifies the full panoply of adversary safeguards; that is, counsel, confrontation, cross-examination, and compulsory process for witnesses. *See Trevino*, 565 S.W.2d at 940.

In this case, trial counsel pleaded the Fifth Amendment in response to appellant's questions concerning his representation of appellant. Appellant was not able to cross-examine him concerning the statements which he made in his affidavit. We hold that appellant was denied his confrontation rights when the trial court admitted the affidavit into evidence.

We do not find the error harmless. The affidavit supports the trial court's ruling and therefore we cannot find that it could not have influenced the trial court's ruling. The record shows that the trial court heard testimony that trial counsel did indeed advise appellant that he would receive probation. Although the trial court properly admonished appellant with respect to the guilty plea, that does not necessarily mean that trial counsel did not make an improper promise and that appellant did not rely on that promise in entering his plea. The promise would have loomed over these proceedings. Once the trial court allowed trial counsel to plead the Fifth Amendment, all testimony from trial counsel, whether oral or written, should have been excluded.

Furthermore, trial counsel was improperly allowed to plead the Fifth Amendment at the new trial hearing. Trial counsel could not reasonably have believed that his testimony could be used against him in a subsequent criminal proceeding. *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975); *U.S. v. Sharp*, 920 F.2d 1167, 1170 (4th Cir.1990). But, even if trial counsel did properly refuse to answer, the affidavit should have been excluded because of the Fifth Amendment plea. The trial court should have heard live testimony from the trial counsel. We sustain point three.

The cause is abated for reconsideration of appellant's motion for new trial in accord with this opinion. *See generally McIntire v. State*, 698 S.W.2d 652, 662 (Tex.Crim.App. 1985). If, after hearing, the trial court grants the motion, the trial court should docket the cause for new trial and forward a copy of its order granting new trial to this Court. At that time, we will dismiss the notice of appeal. In the event the trial court denies the motion for new trial, the trial court shall enter a written order denying the motion and forward it, along with a statement of facts from the hearing, to this Court. At that time, the appeal will be reinstated and appellant's brief will be due 30 days from the reinstatement. If appellant wishes to complain about the trial court's denial of his

---

1. 565 S.W.2d 938 (Tex.Crim.App.1978).

motion, it will be necessary for him to file a new appellate brief. The State's brief will be due twenty-five days after the filing of appellant's brief.

The appeal is abated.

GILBERTO HINOJOSA, J., dissents.

GILBERTO HINOJOSA, J., dissenting.

I dissent. I would affirm the trial court's judgment.

*The Guilty–Plea and Sentencing Hearings*

On January 22, 1993, the trial court held the guilty-plea hearing. At that hearing, the State informed the trial court that it was proceeding on count 1 of the indictment. That count charged that appellant had committed an aggravated robbery. The trial court asked appellant the following:

1. Whether his true and correct name was Francisco Javier Lopez;

2. Whether he was the same Francisco Javier Lopez charged in this case, CR–2602–92–E, with the offenses of aggravated robbery in counts I, III, and V, and burglary of a habitation in counts II, IV, and VI;

3. Whether he had discussed his case with his attorney; and

4. Whether he was satisfied with his attorney's services and advice.

Appellant answered affirmatively to these questions. The trial court asked trial counsel, "[H]ave each of you and your clients [appellant and Meza] had at least 10 full days within which to prepare for trial in your cases?" Counsel responded, "Yes, your Honor, we have on behalf of Mr. Meza and ... [appellant], you Honor." It asked appellant if he had been served with a copy of the indictment, and he answered affirmatively. Trial counsel waived the reading of the indictment. The trial court informed appellant that count 1 charged a first-degree felony, and it advised him about the punishment range for a first-degree felony. (It did not advise him that he could receive probation.) It asked him if he understood the punishment range, and he answered affirmatively. It asked him whether he had ever been

declared mentally incompetent to stand trial and whether he was under the influence of any drugs, alcohol, or medication. Appellant answered no to these questions. The trial court asked trial counsel if he found appellant mentally competent to stand trial and to assist him in his own behalf. Trial counsel answered that appellant was competent. The trial court found appellant mentally competent to stand trial.

The trial court informed appellant that he had the right to have a separate jury hear his case and assess his punishment, or he could waive that right and ask the court to hear his case and assess his punishment. It showed appellant the "WAIVER OF JURY" and asked him whether the signature on the waiver was his, whether trial counsel explained the waiver to him before he signed it, and whether he understood it. Appellant answered affirmatively to these questions. The trial court approved the waiver and allowed him to receive a trial by the court.

The trial court also explained to him that he had the right to have the witnesses confront him in open court and to cross-examine them. It informed him that he could waive those rights and allow the State to introduce evidence against him in the form of written statements, affidavits, and other types of documentary evidence, instead of having witnesses testify against him. The trial court showed him the "STIPULATION OF EVIDENCE" and asked him these questions:

1. Whether he had signed the stipulation of evidence;

2. Whether his attorney explained to him the stipulation of evidence before he signed it;

3. Whether he understood the stipulation of evidence;

4. Whether he understood that by signing the stipulation of evidence, he was waiving his right to have the witnesses appear in court for cross-examination purposes;

5. Whether he understood that the stipulation of evidence contained a confession by him admitting the charge against him which was listed in that stipulation; and

6. Whether he was asking the trial court to approve his stipulation and consider his confession.

Appellant answered affirmatively to these questions. The trial court accepted the stipulation of evidence and considered his written admission of the charge.

When the trial court asked whether a plea bargain existed, the State's attorney responded that they were requesting a PSI.

The trial court asked appellant if he was a United States citizen, and he answered no. It asked him whether he understood that a guilty plea to the offense charged could result in his deportation and exclusion from admission to the United States or his denial of naturalization under federal law. He answered affirmatively. After the trial court made the aforementioned inquiries, appellant pleaded guilty to count one of the indictment. The trial court asked appellant if anyone had threatened him or forced him in any way, or promised him anything to get him to plead guilty to the offense. He answered no. The trial court also asked him if he was pleading guilty freely and voluntarily because the facts as he understood them made him guilty. He answered affirmatively. The trial court found that he entered his plea freely and voluntarily, and it accepted his guilty plea. It admitted all of the State's exhibits into evidence and deferred pronouncement of judgment and sentence until February 24, 1993. It also ordered a PSI.

On February 24, 1993, the trial court held the sentencing hearing. It asked appellant if his correct name was Francisco Javier Lopez and if he was the same Francisco Javier Lopez who appeared on January 22, 1993 and pleaded guilty to the offense of aggravated robbery. Appellant answered affirmatively to both questions. The State made an oral motion that counts two through six be unadjudicated. The trial court asked appellant if he understood that the State had made a motion to consider counts two through six as unadjudicated offenses and whether he was asking it to grant the motion. He answered affirmatively to both questions. The trial court granted the motion and considered the offenses stated in counts two through six as unadjudicated offenses in assessing punishment. The trial court adjudged appellant guilty of the offense of aggravated robbery

as charged in count one. It assessed his punishment at 16 years in prison.

The transcript includes the written "STIPULATION OF EVIDENCE" and "WAIVER OF JURY." Appellant signed both documents.

### The Motion For New Trial

Appellant alleged in his motion for new trial that he was denied effective assistance of trial counsel guaranteed by the United States and Texas Constitutions. To support this claim, he alleged that trial counsel had promised him that he would receive probation. Based on this advice, he pleaded guilty to the offense of aggravated robbery when, in fact, he was not eligible for probation.

The trial court held a hearing on the motion for new trial at which attorney Mark Alexander and the State called several witnesses to testify.

Appellant testified that his trial counsel had informed him that he was going to get him probation if he pleaded guilty. Appellant indicated that no plea bargaining had occurred at the time he had pleaded guilty to the offense of aggravated robbery. He said that trial counsel did not tell him anything. He also testified that he was not eligible for probation. On cross-examination, he admitted that the trial court advised him about the punishment range for this case. However, he maintained that trial counsel advised him not to worry because this was his first offense, and he was going to get probation.

Appellant's alleged co-defendant, David Meza, testified that trial counsel advised him to "have a little faith, because he [trial counsel] was going to get me probation." He pleaded guilty because trial counsel informed him that he was going to receive probation, and he wanted to get out of the county jail.

Jaime Gonzalez, Jr., the State's attorney who was in charge of appellant's case, testified that he made the sentencing recommendation to appellant's trial counsel. Gonzalez indicated that he never informed appellant's trial counsel that he would offer probation in appellant's case. Gonzalez said that he did not mention probation as an option.

Barbarita Hernandez, appellant's mother, testified that she hired appellant's trial counsel to represent him. She understood that trial counsel "was going to take him [appellant] out on probation." She stated that trial counsel informed her that appellant would get probation. She also testified that trial counsel promised appellant that if he pleaded guilty, he would receive probation.

Javier Esquivel testified that he was present when trial counsel and Barbarita Hernandez had a conversation. Esquivel stated that trial counsel had informed Hernandez and appellant "that he was going to help him. He was going to do everything possible to try to get them [appellant and David Meza] out on probation."

The trial court admitted into evidence State's Exhibit 1, trial counsel's affidavit, in which he stated, in part, that he had never promised appellant and Meza that the trial court would give them probation. After considering the evidence, the trial court overruled the motion for new trial.

By point one, appellant complains that the trial court erred when it overruled his motion for new trial because his guilty plea was involuntary. Appellant argues that he pleaded guilty to the aggravated robbery charge based upon his trial counsel's representation that he would receive probation.

The United States Supreme Court in *Brady v. United States* [1] established the standard in determining the voluntariness of a guilty plea. The Court of Criminal Appeals quoted this standard in *Ex parte Shuflin,* 528 S.W.2d 610, 615 (Tex.Crim.App.1975). The *Brady* Court stated:

[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes). [citation omitted].

*Brady,* 397 U.S. at 755, 90 S.Ct. at 1472. The *Brady* Court further stated that "[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision...." *Brady,* 397 U.S. at 757, 90 S.Ct. at 1473.

The Code of Criminal Procedure provides that "[n]o plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." TEX CODE CRIM.PROC.ANN. art. 26.13(b) (Vernon 1989). The constitutional key to the validity of a guilty plea is that an accused made it voluntarily and intelligently and, if upon advice of an attorney, that counsel was reasonably competent and rendered effective assistance. *Meyers v. State,* 623 S.W.2d 397, 401 (Tex.Crim.App.1981); *Rodriguez v. State,* 850 S.W.2d 603, 605 (Tex. App.—El Paso 1993, no pet.). The purpose and function of the mandates of article 26.13 are to ensure that only a constitutionally valid plea is entered and accepted by the trial court, and substantial compliance with its dictates is required. *Meyers,* 623 S.W.2d at 402; *Whitten v. State,* 587 S.W.2d 156, 158 (Tex.Crim.App.1979). The overriding concern is the accused's rights of due process and due course of law. *Ex parte Lewis,* 587 S.W.2d 697, 700 (Tex.Crim.App.1979).

Appellate courts examine the whole record when reviewing a challenge to the voluntariness of a guilty plea. *Williams v. State,* 522 S.W.2d 483, 485 (Tex.Crim.App.1975); *Ford v. State,* 845 S.W.2d 315, 316 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *see also Brady,* 397 U.S. at 749, 90 S.Ct. at 1469. Appellant's attestation of voluntariness at the original plea hearing imposes a heavy burden on the accused to later show, at a subsequent hearing, a lack of voluntariness. *Jones v. State,* 855 S.W.2d 82, 84 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Thornton v. State,* 734 S.W.2d 112, 113 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

The decision on a motion for new trial rests in the discretion of the trial court. In

1. 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

the absence of a showing of abuse, that discretion will not be disturbed on appeal. *Beal v. State*, 520 S.W.2d 907, 912 (Tex.Crim.App. 1975). The Court of Criminal Appeals has interpreted this standard to mean that a case will be reversed "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App.1992).

In the instant case, prior to accepting appellant's guilty plea, the trial court asked appellant whether his plea was free and voluntary and not the result of fear or promises, to which appellant responded affirmatively. The trial court also informed appellant of the punishment range and ascertained that the appellant had ample opportunity to consult with his attorney. Though appellant presented evidence at the new-trial hearing that his trial counsel had · allegedly advised or promised him that he would receive probation, the trial court did not even mention probation during the guilty-plea or sentencing hearings, and appellant never informed the trial court that he expected to receive probation, or that his attorney advised him or promised him that he would receive probation. The record reveals that the guilty plea was understandingly, freely, and voluntarily made, and I consider the trial court's warnings and admonitions in substantial compliance with article 26.13. I would hold that the trial court's decision to deny the motion for new trial was not so clearly wrong that reasonable persons might disagree with it. I would overrule point one.

By point two, appellant complains that he was denied effective assistance of counsel when he was led to believe that he was eligible for probation and that he would probably get probation when, in fact, he was not eligible for probation.

The proper standard for determining ineffective-assistance claims under the Sixth Amendment is the standard adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court of Criminal Appeals adopted this standard in *Hernandez v. State* [2] and restated it in *Jackson v. State*,

877 S.W.2d 768, 770–71 (Tex.Crim.App.1994). In *Strickland*, the Supreme Court adopted a two-pronged analysis for ineffective-assistance claims. Under the first prong, the accused must show that counsel's performance was deficient, to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Under the second prong, the accused must show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Under the *Strickland* test, the accused has the burden to prove ineffective assistance. *Jackson v. State*, 877 S.W.2d at 771. In addition, when reviewing an ineffective assistance claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

Having already examined all the circumstances surrounding appellant's guilty plea and having found that he voluntarily entered the plea, I would reject appellant's claim of ineffective assistance of counsel and overrule point two.

By point three, appellant complains about the admission of counsel's affidavit. I agree with the majority that the trial court erred in admitting the affidavit. However, I would hold that the error was harmless because the trial court could still have found that appellant's guilty plea was understandingly, freely, and voluntarily made. I would overrule point three and would affirm the judgment of the trial court.

---

2.   726 S.W.2d 53 (Tex.Crim.App.1986).