**ABATE and REMAND; Opinion Filed February 26, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01060-CR

### STEFON JOE BRANTLEY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F-1257441-L**

## OPINION

Before Justices Lang-Miers, Brown, and Schenck[1]
Opinion by Justice Brown

After a jury found appellant Stefon Joe Brantley guilty of murder, appellant filed a motion for new trial based on *Brady v. Maryland,* 373 U.S. 83 (1963). The trial judge held a portion of the hearing on that motion in chambers, during which the judge himself elicited testimony from prosecutors, outside the presence of both appellant and his attorney, and then sealed the record of that hearing. In this appeal, appellant asserts by doing so, the trial judge violated his constitutional rights to the assistance of counsel, to confrontation, and to due process of law. Because we agree, we abate this appeal and remand to the trial court to conduct a new hearing on appellant's motion for new trial. We also order the sealed portion of the record from the motion for new trial hearing unsealed.

---

[1] The Honorable Justice David Schenck succeeded Justice Michael J. O'Neill, a member of the original panel, following Justice O'Neill's retirement. Justice Schenck has reviewed the briefs and record before the Court.

A grand jury indicted appellant for the murder of James Ramirez. At trial, appellant admitted shooting Ramirez from a vehicle while Ramirez was on the street. The State conceded that when appellant did so, Ramirez had just exited another vehicle and was running toward appellant holding two empty beer bottles. Consequently, the only contested issues were whether appellant acted in self-defense and whether he acted with sudden passion arising from adequate cause.

The State's evidence showed that before the shooting appellant and Ramirez were involved in a protracted altercation while waiting to leave a crowded parking garage in downtown Dallas. Ramirez was in a gold van driven by his friend, Fabian Navarette. Navarette's friend, Celedina Orosco, was also a passenger in the van. Appellant was in a black SUV driven by his friend Edwin Marulanda. At one point, while the vehicles were waiting in line to exit the garage, appellant and Ramirez began arguing because the SUV was honking its horn. Eventually, both appellant and Ramirez got out of their vehicles. When it appeared the altercation might become violent, a security guard broke it up. The shooting occurred soon after both vehicles left the parking garage.

Orosco was the State's primary witness with respect to the events immediately preceding the shooting. According to her testimony, when Navarette finally exited the parking garage and started driving down Elm Street, the black SUV came at them, swerving toward the side of the van. Navarette swerved away, causing their van to almost hit a curb. She said as the van was swerving, Navarette made a hard turn onto Lamar. They were all yelling, the van was going "every which way," and she could not keep her seat.

According to Orosco, Navarette stopped the van at an intersection because there was a red light. She said for some reason, Ramirez then got out of the van. She asked him what he was doing, and he responded that everything was going to be "okay," and he would be "right

–2–

back." Orosco followed Ramirez out of the van and watched as he walked toward the back of the van. Orosco then heard two gunshots. She said Ramirez turned toward her, and then fell to the ground. She did not see anything in his hands, but heard glass breaking as he fell. She and Navarette then helped Ramirez back into the van and took him to Parkland Hospital. Ramirez died a few hours later from a single gunshot wound to his left hip.

Navarette painted a somewhat different picture of the events that immediately preceded the shooting. According to Navarette, when he began driving down Elm Street, he saw the black SUV stopped on the street in front of them. As he passed the SUV, it pulled behind him and then followed as he turned on Lamar. According to Navarette, he stopped the van suddenly at the intersection. He said he did not know how far the SUV was behind them, but he could see it in the lane next to him from his side view mirror. From the side mirror, Navarette also witnessed Ramirez getting shot.

On cross-examination, Navarette stated he did not know if the light at the intersection was red or green, but admitted the only reason he stopped was because Ramirez had jumped out of the van. Ultimately, Navarette conceded that if Ramirez had stayed in the van, and he had just driven through the "green light," Ramirez would still be alive.

Appellant testified and admitted shooting Ramirez. Appellant acknowledged when the gold van proceeded down Elm Street, Marulanda followed behind. After both vehicles turned onto Lamar, the van stopped at a green light in the middle of three northbound lanes. Ramirez then jumped out of the van, and ran toward appellant holding two beer bottles over his head. Appellant said he was afraid, so he fired one shot. As Ramirez continued his approach, appellant fired another. Ramirez then fell to the ground.

After hearing the evidence, the jury rejected appellant's claim of self-defense and found him guilty of murder. At punishment, the jury also rejected appellant's claim of sudden passion, and assessed a thirty-five year prison sentence.

On appeal, appellant asserts the in camera ex parte proceedings the trial court conducted on his motion for new trial violated his constitutional rights in several respects. We agree.

Appellant filed a motion for new trial asserting the State violated his right to due process of law by failing to disclose material favorable evidence as required by *Brady v. Maryland,* 373 U.S. 83 (1963). Specifically, he asserted the State failed to disclose Navarette's account of the events that immediately preceded the shooting. According to appellant, Navarette's account was both exculpatory and impeaching because it bolstered his claim of self-defense and conflicted with Orosco's testimony that refuted that claim. Appellant further alleged that while the prosecutors made selective disclosures of Navarette's interview in response to his pre-trial request for Brady information, it intentionally omitted this critical portion of the interview. Appellant also claimed the State, knowing that Navarette's testimony would be favorable, took active steps to suppress it.

Appellant supported his motion with affidavits from Navarette and appellant's trial counsel, Andy Beach. In his affidavit, Navarette stated that in his pretrial interview with Assistant District Attorney Meredith Behgooy, he told her that the black SUV had pulled "behind" his van on Elm Street and that he had made the sudden stop at the intersection because Ramirez had gotten out of the van so fast. Navarette also stated he had volunteered to testify at trial and was sworn in as a witness, but that Behgooy told him he had an outstanding warrant for "criminal mischief" and that the "best thing would be for [him] not to show up at trial because there was a probability of getting arrested."

According to Beach's affidavit, at the same time Behgooy suggested that Navarette not show up for trial, she told Beach that appellant did not need to subpoena Navarette because he would be testifying at trial as a State's witness. On the day of trial, however, Behgooy and her supervisor Danielle Uher, told Beach that Navarette was not present for trial and would not be testifying after all. The State then refused to request a writ of attachment to secure Navarette's presence. The trial judge nevertheless issued a writ because Navarette had been previously sworn as a witness.

Beach said the State did not tell him that Navarette would be available to testify until after Orosco had testified. He further said he did not know what Navarette had witnessed until he was testifying on the stand. According to Beach, Navarette's account substantially bolstered appellant's claim of self-defense and, if he had known that Navarette could provide favorable evidence, it would have altered his presentation of the case, including his opening statements, the manner in which he questioned Orosco, and his advice to appellant on whether to testify.

The trial judge held a hearing on appellant's motion for new trial. At the hearing, appellant attempted to call Behgooy and Uher to support his claims. The State initially opposed appellant's request asserting "no hearing was necessary" because appellant's motion had failed to show any information allegedly withheld was "material." However, once it became apparent that the trial judge was going to proceed with the hearing, the State altered course. It asserted calling prosecutors to the stand would be "completely improper," and suggested the "proper remedy" would be for the judge to "interview" the prosecutors in camera, rather than allowing appellant to question them in "open court." The State further asserted that appellant's attorney could not be present during this questioning and declared that the transcript would also be "sealed." The trial judge accepted the State's position, stating he was not "going to have prosecutors called to the stand so that lawyers can conduct fishing expeditions." The trial judge

said he would ask "whatever proffered questions [the] Defense want[ed] asked," but agreed with the State that neither appellant nor his attorney could be present during that questioning and further ordered the record of their testimony be sealed.

Appellant objected that there was no basis in law for such a proceeding, he had made a prima facie case supported by affidavits, and he was therefore entitled to question the prosecutors to develop a record to support his claims. Appellant further objected that the in camera ex parte proceedings would violate his rights under the confrontation clause and the due process and due course of law clauses of the United States and Texas Constitutions. The trial judge overruled appellant's objections, halted the proceedings in open court, went off the record, and resumed the hearing, now ex parte, in chambers with only the prosecutor who was being questioned and the court reporter present.

In camera, before he began questioning, the trial judge determined, as officers of the court, the prosecutors "did not need to be sworn." The trial judge then asked the prosecutors "selected" questions from a list appellant proffered. After asking those questions, the trial judge allowed each prosecutor to add anything else they wished to on the record. Before concluding the ex parte portion of the hearing, the trial judge stated that he had also reviewed the prosecutors' notes from the witness interviews and that he was "incorporating" those notes into his decision. The trial judge did not, however, admit the notes into evidence, and they are not part of the sealed record before this Court. When the hearing resumed in open court, the trial judge denied appellant's motion for new trial, specifically referencing the ex parte proceedings.

Before addressing appellant's constitutional arguments, we first consider the State's assertion that appellant cannot complain of the manner in which the hearing was held because he was not entitled to the hearing in the first place. *See Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009) (trial court is not required to hold hearing on motion for new trial unless the

–6–

motion alleges sufficient facts showing reasonable grounds that he could prevail). We cannot agree. Regardless of whether the trial judge *could have* denied appellant's motion without a hearing, he did not do so. Instead, he heard evidence on the motion and denied the motion based on the hearing. The question for the trial judge when he did so was whether the evidence at the hearing showed appellant was entitled to a new trial, and the issue of whether appellant was entitled to the hearing in the first instance was no longer relevant.

Furthermore, we cannot agree appellant was not entitled to a hearing on his motion for new trial. A defendant is entitled to a hearing if the motion and accompanying affidavit(s) "rais[e] matters not determinable from the record, upon which the defendant could be entitled to relief." *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (*citing Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)). To be sufficient to entitle the defendant to a hearing, the motion for new trial and accompanying affidavit(s) "need not establish a prima facie case" for a new trial. *Wallace,* 106 S.W.3d at 108; *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). Rather, they "must merely reflect that reasonable grounds exist for holding that such relief could be granted." *Wallace*, 106 S.W.3d at 108 (citing *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002)). Indeed, the purpose of the hearing is to give the defendant the opportunity to fully develop the matters raised in his motion. *Wallace*, 106 S.W.3d at 108; *Martinez*, 74 S.W.3d at 21.

Here, appellant filed a motion, supported by affidavits, alleging the State failed to disclose favorable information that it had received from Navarette in a pretrial interview. According to the State, appellant's motion failed to show he might be entitled to a new trial because it did not describe any information the State was required to disclose. The State's argument, as we perceive it, is that it was not required to disclose Navarette's *out-of-court* statement because that statement could not be used to impeach Orosco's "credibility." *See Pena*

*v. State*, 353 S.W.3d 797, 811-12 (Tex. Crim. App. 2011) (State has no duty to disclose favorable, material evidence if it would be inadmissible in court); *but see Ex Parte Miles*, 359 S.W.3d 647, 669 n. 22 (Tex. Crim. App. 2012) (recognizing State might have duty to disclose inadmissible evidence if disclosure could have led to other favorable admissible evidence). The State misunderstands the basis of appellant's complaint. Specifically, appellant contends Navarette's first-hand account of the events leading to the shooting was itself favorable information that both supported his claims of self-defense and contradicted Orosco's testimony refuting that claim. *See Pena*, 353 S.W.3d at 811-12 (exculpatory evidence is that which may justify, excuse, or clear the defendant from alleged guilt, and impeachment evidence is that which disputes, disparages, denies, or contradicts other evidence). We conclude appellant's motion, and supporting affidavits, were sufficient to show appellant was entitled to a hearing to fully develop the matters asserted therein.

On appeal, appellant complains that the manner in which the trial judge conducted that hearing, by questioning the prosecutors outside of his presence and the presence of his attorney and then sealing the record of their testimony, violated his state and federal constitutional rights to the effective assistance of counsel, to confrontation, and to due process. We agree. We begin by addressing the State's argument that the trial judge's actions were permissible because he was following an "established analogous procedure," specifically, an in-camera review of documents.

Initially, we cannot agree with the State's assessment of the nature of the proceeding. The trial judge was not engaging in an in camera "procedure," but was conducting part of the hearing on appellant's motion for new trial, which is an adversarial criminal proceeding. *See LaPointe v. State*, 225 S.W.3d 513, 518 (Tex. Crim. App. 2007) (noting distinction between an in camera procedure and an in camera hearing, the latter of which generally contemplates the attendance of the parties). Nor was the trial judge reviewing existing documents, but was

himself creating and developing record evidence from which both he and this Court were to evaluate appellant's Brady claims. And regardless of any similarities the proceedings may have had to an in camera review of documents, it is the differences that are of constitutional significance.

It is "without doubt" that a hearing on a motion for new trial is a critical stage of a criminal proceeding at which a defendant is entitled to counsel under both the Sixth Amendment of the United States Constitution and the Texas Constitution. *Cooks v. State*, 240 S.W.3d 906, 910 (Tex. Crim. App. 2007); *see also Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim. App. 1978); *Connor v. State*, 877 S.W.2d 325, 327 (Tex. Crim. App. 1994). The Court of Criminal Appeals has explained this hearing is so important because it is the defendant's "only opportunity to present to the trial court certain matters that may warrant a new trial, and to make a record on those for appellate review." *Trevino*, 565 S.W.2d at 940; *see also McAfee v. Thaler*, 630 F.3d 383, 392 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 754 (2011) (the Texas Court of Criminal Appeals and every Texas court of appeals that have addressed the issue have universally held a hearing on a motion for new trial is a "critical stage" of a criminal proceeding); *Lopez v. State*, 895 S.W.2d 392, 394 (Tex. App.—Corpus Christi 1994, no pet.) (the importance of the new-trial hearing justifies the full panoply of adversary safeguards, including counsel, confrontation, cross-examination, and compulsory process for witnesses).

The right to counsel is "a fundamental component of our criminal justice system." *United States v. Cronic*, 466 U.S. 648, 653-54 (1984). That right is "by far the most pervasive for it affects [the defendant's] ability to assert any other rights he may have." *Cronic*, 466 U.S. at 654 (citing Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956)). A defendant's right to counsel is violated when counsel is either totally absent or is prevented from assisting the accused during a critical stage of the proceeding. *Cronic*, 466 U.S. at 659 n. 25.

The Texas Court of Criminal Appeals also long ago held that under Article I, Section 10 of the Texas Constitution, a defendant has the right to be present at a hearing on a motion for new trial.[2] *See Ruiz v. State*, 242 S.W. 231, 232 (Tex. Crim. App. 1922); *Coons v. State*, 758 S.W.2d 330, 339 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd); *see also* TEX. CODE. CRIM. PRO. ART. 33.03 (West 2006) (requiring the defendant be personally present at hearing on motion for new trial in felony case). In particular, that Court held the Texas Constitution guarantees a defendant the right to be confronted with the witnesses against him at any phase of his trial, including a hearing on a motion for new trial.[3] *Ruiz*, 242 S.W. at 232.

Moreover, the right to confront adverse witnesses is not limited to rights secured under the confrontation clauses of either the United States or Texas Constitutions, but "finds its roots deep in the guarantee of due process." *See Webb v. State*, 278 S.W.2d 158, 160 (Tex. Crim. App. 1955) (op. on reh'g). Consequently, traditional and fundamental standards of fairness require a defendant be permitted to confront and cross-examine witnesses at criminal proceedings even when those proceedings are not part of the "trial proper." *See Webb*, 278 S.W.2d at 160; *see also Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (due process requires a defendant be given the opportunity to be personally present and to confront and cross-examine witnesses at parole revocation hearing). Indeed, due process requires a defendant be given the

---

[2] In a similar vein, the court of criminal appeals has held a defendant has the right to compulsory process at a motion for new trial hearing when necessary to support the grounds on which the motion rests. *See Heffner v. State*, 260 S.W. 198, 199 (1924) ("the presence of jurors as witnesses, upon the hearing of a motion for new trial sought because of misconduct of the jury, may be of the utmost moment to one convicted of crime, and we have no doubt of his right to compulsory process for them such as is guaranteed every accused person by our Bill of Rights.").

[3] According to the State, appellant did not have the right to be present or to confront or cross-examine the witnesses because the Confrontation Clause of the Sixth Amendment is a "trial right" and categorically does not apply to a hearing on a motion for new trial. The State's position is not as firmly established as it would suggest, and it cites no controlling authority to support it. The federal cases the State does cite to support its position do not concern pre-appeal motions for new trial, but rather post-conviction proceedings, and are therefore inapposite. *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987) (post-conviction relief is even further removed from the criminal trial and is not part of the criminal proceeding itself). We also note that the confrontation clause jurisprudence from the Supreme Court rarely takes a simplistic approach when determining whether the confrontation clause applies to a criminal proceeding. *See, e.g., Pennsylvania v. Richie,* 480 U.S. 39, 52 (1987). But we need not reach the question here because, even if the Confrontation Clause of the Sixth Amendment does not apply to a hearing on a motion for new trial, appellant had the right to confront and cross-examine witness under other constitutional provisions.

opportunity to confront and cross-examine witnesses "in almost every setting where important decisions turn on questions of fact." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).

Here, appellant filed a motion for new trial asserting the State had knowingly withheld favorable material evidence. *See Brady*, 373 U.S. at 87-88. Under the laws of this State, appellant was entitled to a hearing to give him an opportunity to fully develop that claim. *Wallace*, 106 S.W.3d at 108; *Martinez*, 74 S.W.3d at 21. The trial judge, however, excluded both appellant and his attorney from the very portion of the hearing in which appellant was attempting to do so. Instead, the prosecutors, who were indisputably adverse to appellant, were permitted to testify ex parte and present evidence refuting appellant's claims.[4] They were not subject to cross-examination or any other checks that surround the adversarial process. Appellant could not, for instance, insist the prosecutors be sworn, ensure the prosecutors' answers to his questions were responsive, or ask any follow-up questions. Appellant was then further denied the opportunity to rebut any testimony offered. Appellant was also denied any opportunity to assert any rights or raise any additional complaints that might have arisen during the ex parte hearing. *See, e.g.*, *Maryland v. Craig*, 497 U.S. 836, 845−46 (1990) (the rights guaranteed by the confrontation clause include the right to insist that testimony be given under oath); *Clarke v. State*, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008) (appellant may seek to enlarge claim at hearing on motion for new trial).

We conclude appellant had the right to counsel during the entirety of the hearing on his motion for new trial. We further conclude, whether rooted in the confrontation clause or his right to due process, appellant also had the right to be present and to confront and cross-examine the witnesses at the hearing. We conclude the trial judge clearly violated those rights by

---

[4] The State contends appellant's confrontation rights were not implicated because the prosecutors were not witnesses "*against*" appellant because he requested to call them to the stand. We disagree. "The availability of the right to confront and to cross-examine those who give damaging testimony against the accused has never been held to depend on whether the witness was initially put on the stand by the accused or by the State." *Chambers v. Mississippi*, 410 U.S. 284, 297-98 (1973).

–11–

preventing both appellant and his attorney from being present at, and participating in, a critical portion of the hearing on his motion for new trial.

Finally, appellant also asserts the "in camera ex parte" nature of the proceeding itself violated his right to due process of law. Appellant's complaint here is necessarily related to, and intertwined with, his other complaints, but raises independent constitutional concerns that warrant consideration.

In our justice system, ex parte and in camera proceedings are looked upon with disfavor. *See U.S. Gov't v. Marks*, 949 S.W.2d 320, 325-26 (Tex. 1997). Indeed, due process concerns are raised whenever a court relies on ex parte submissions in resolving an issue that is the subject of an adversarial proceeding. *U.S. v. Abuhamra*, 389 F.3d 309, 322-23 (2d Cir. 2004). A fair hearing requires each party "to be apprised of all of the evidence upon which a factual adjudication rests, plus the right to examine, explain or rebut all such evidence." *See Carter v. Kubler*, 320 U.S. 243, 248 (1943). "Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *Id.* Ex parte in camera proceedings also implicate due process concerns because they are closed to the public. *See Levine*, 362 U.S. at 616. A defendant's right to public proceedings is not limited to the right to a public trial, but is "deeply rooted" to the common law notion that "justice must satisfy the appearance of justice." *Levine v. United States*, 362 U.S. 610, 616 (1960) (*citing Offutt v. United States*, 348 U.S. 11, 14 (1954)).

There are therefore limited circumstances in which in camera, and even more rarely ex parte, proceedings will survive constitutional scrutiny. In determining whether such a proceeding is permissible, the defendant's rights must be balanced against the State's legitimate interest in proceeding in secret. *See, e.g., LaPointe v. State*, 225 S.W.3d at 519 (explaining "rape

shield" statute allowing for in camera questioning of rape victim withstood constitutional challenge because it balanced privacy interests of the victim with the confrontation right of the defendant and allowed the defendant's counsel to be present and to question the witness); *United States v. Orozco*, 982 F.2d 152, 156 (5th Cir. 1993) (in camera hearing excluding both appellant and the State permissible when necessary to protect informant from "real danger"); *United States. v. De Los Santos*, 810 F.2d 1326, 1134 (1987) (ex parte hearing permissible when open hearing would compromise the safety of informant and hinder the potential apprehension of other narcotic dealers); *see also Marks*, 949 S.W.2d 320 at 327 (ex parte hearing permissible when appellant's interest in attending hearing small compared to the government's interest in preserving integrity of grand jury proceedings).

In this case, the trial court conducted a closed adversarial criminal proceeding at which the State was permitted to submit testimony ex parte. *Cf. Houston Chronicle Pub. Co. v. Shaver*, 630 S.W.2d 927, 932 (Tex. Crim. App. 1982) (the action of the trial judge in "rising from the bench, retiring to chambers and conducting the remainder of the hearing in private" is the "functional equivalent" of closing the court to the public). The only basis the State articulated for the closed proceedings was that it would be "completely improper" to have prosecutors testify in "open court." But it is hardly unusual for a prosecutor to testify at a Brady hearing. *See, e.g. Pena*, 353 S.W.3d at 805; *Webb v. State*, 232 S.W.3d 109, 111 (Tex. Crim. App. 2007); *Armstrong v. State*, 897 S.W.2d 361, 365 n.4 (Tex. Crim. App. 1995); *Little v. State*, 991 S.W.2d 864, 865 (Tex. Crim. App. 1999); *Quinos v. State*, 592 S.W.2d 933, 942 (Tex. Crim. App. 1980). Nor does the State have a legitimate interest in having prosecutors testify secretly − for no other reason than they are prosecutors − when their testimony is otherwise relevant to an issue properly before the Court. If anything, allowing such secret testimony is contrary to the public

interest and would do little but foster distrust in our system of justice.[5]  *Cf. Sheppard v. Maxwell*, 384 U.S. 333, 349-50 (1966) (the principle that justice cannot survive behind walls of silence has long been reflected in the 'Anglo-American distrust for secret trials'); *In re Oliver*, 333 U.S. 257, 273 (1948) (this Country has universally required public trials because of our historical distrust of secret proceedings and their inherent dangers to freedom).

The State also asserts the ex parte hearings were justified to protect any "unnecessary" disclosure of work product.  Yet prior to trial, the State agreed to a pretrial discovery order in which it agreed to produce "any statements by any party or witness to [the] alleged offense in the State's possession or within its knowledge . . . whether such statements were written or oral, which might in any manner be material to either the Defendant's guilt or innocence or punishment."  *See U.S. v. Nobles*, 422 U.S. 225, 239 (1975) (work product privilege can be waived).  Likewise, at the hearing on the motion for new trial, the State claimed it had voluntarily disclosed Navarette's interview.  The State cannot now assert that work product privilege prevented appellant from inquiring whether it, in fact, did so.  Moreover, to the extent the trial judge wanted to protect any continued interest the State retained in its work product, he could have done so through far less drastic measures.  *See, e.g., Johnson v. State*, 433 S.W.3d 546, 555 (Tex. Crim. App. 2014) (trial judges may impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.).

On the other hand, appellant's interests in being present at the hearing on his motion for new trial, to have his attorney present for that hearing, and to have that hearing subject to adversarial scrutiny were significant.  The ex parte in camera proceedings not only invaded those

---

[5] On the other hand, openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system.  *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979).

–14–

interests, appellant was then further denied any access to the evidence the trial judge relied on in denying his motion for new trial when the judge sealed the record of those proceedings. Even now, appellant does not know what the State's position was, whether the prosecutors denied Navarette's allegations, or whether they successfully explained why those allegations did not entitle appellant to relief. In either event, "[j]ustice must satisfy the appearance of justice." *Offutt*, 348 U.S. 14. This proceeding fell far short. For these reasons, we agree with appellant that the ex parte in camera proceedings were not consistent with due process.

We conclude the trial judge violated appellant's right to counsel, his right to confront witness, and his right to due process by conducting a portion of his motion for new trial in camera and ex parte. Consequently, we abate this appeal and remand to the trial court to conduct a new hearing on appellant's motion for new trial. *See McQuarrie v. State*, 380 S.W.3d 145, 155 (Tex. Crim. App. 2012) (remanding to trial court to conduct another hearing on appellant's motion for new trial when trial court committed errors at first new trial hearing); *cf. LaPointe*, 225 S.W.3d at 520-21 (proper remedy when trial court failed to conduct a proper adversarial hearing in the presence of the parties and attorneys was to abate appeal and remand to the trial court for a proper hearing). Additionally, because the trial judge articulated no justification whatsoever for sealing the record of the in camera proceedings, and we perceive of no valid reason for doing so under these facts, we order the sealed portion of the record on appellant's motion for new trial to be immediately unsealed.

The clerk of the trial court shall promptly file a supplemental record containing the trial court's ruling granting or denying appellant's motion for new trial, after which this Court will proceed accordingly.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

131060RF.U05