# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00672-CR

---

**Edward Marquez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-17-1284, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Edward Marquez was charged with failing to comply with sex-offender registration requirements, and the State also alleged as an enhancement that Marquez had been convicted of a prior felony offense. *See* Tex. Code Crim. Proc. art. 62.102; Tex. Penal Code § 12.42. At the end of the guilt-or-innocence phase, the jury found Marquez guilty of the alleged offense. At the end of the punishment phase, the jury found the enhancement allegation to be true and recommended that Marquez be sentenced to fourteen years' imprisonment. *See* Tex. Penal Code § 12.33. Consistent with the jury's verdicts, the district court rendered its judgment of conviction. On appeal, Marquez asserts that the district court erred by admitting evidence regarding his arrest for another offense. We will affirm the district court's judgment of conviction.

### BACKGROUND

As set out above, Marquez was charged with failing to comply with the sex-offender registration requirements. Specifically, the indictment alleged that Marquez had been

convicted of indecency with a child by sexual contact; that his prior conviction required him "to register with the local law enforcement authority in the municipality where [he] resided or intended to reside for more than seven days, to-wit: San Marcos, Texas"; and that he "intentionally or knowingly fail[ed] to register with the local law enforcement authority" within seven days of his arrival in San Marcos or "failed to report his change in job status" within seven days of the change "[o]n or about the 5th day of October, 2017." *See* Tex. Code Crim. Proc. arts. 62.051, .057.

During his opening statement at the trial, Marquez asserted that he had been "registering for approximately 20 years without fail" and that he moved to San Marcos but believed that he needed to continue registering in Robstown, Texas, because he considered Robstown to be his home. In addition, Marquez repeatedly insisted that he "was confused" about the registration requirements and that he "made a mistake" when he failed to register. At the start of the trial, the State introduced an agreed stipulation stating that Marquez was previously convicted of indecency with a child by sexual contact in 1994 and that he was required to register as a sex offender because of that conviction.

When presenting its case, the State called the following witnesses: Franklin Rivas, Detective Nadia Muraira from the Kyle Police Department, Officer Jonathan Lopez from the Hays County Sheriff's Office, Detective Juan Villarreal from the Hays County Sheriff's Office, and Detective David Campbell from the San Marcos Police Department. In addition, recordings of interviews of Marquez taken from Detective Muraira's and Detective Campbell's body cameras were admitted into evidence and played for the jury.

In his testimony, Rivas explained that he owns a business in San Marcos, that he met Marquez in Robstown, that he offered Marquez a job, that Marquez worked for him

2

"from February to August" of 2017, and that Marquez lived in a San Marcos home belonging to members of Rivas's family for that entire period. When the State called Detective Muraira to the stand, she explained that she interviewed Marquez two times as part of an unrelated investigation, that Marquez stated that he lived in San Marcos during both interviews, that Marquez was working for Rivas before the first interview, that Marquez was working for Saucedo's Wrecker and Towing Service at the time of the second interview, and that he was living with his employer at the time of the second interview. During Detective Muraira's testimony, two recordings of interviews of Marquez were played for the jury. On those recordings, Marquez admitted in the first interview that he was living in San Marcos but was no longer working for Rivas, and he similarly admitted in the second interview that he was living in San Marcos with his new boss.

After Detective Muraira testified, Marquez objected outside the presence of the jury to the State's next witness, Officer Lopez, and to the State's plan to offer as an exhibit during Officer Lopez's testimony a prerelease form that Marquez was given in September 2017 when he was released from jail for a separate offense more than two weeks before being charged in this case. *See* Tex. R. Evid. 103(b). In particular, Marquez argued that the admission of the testimony and the prerelease form would constitute impermissible extraneous-offense evidence and that the probative value of the evidence was outweighed by the danger of unfair prejudice. *See id.* R. 403, 404. After considering the parties' arguments, the district court overruled Marquez's objections.

In his testimony, Officer Lopez related that he "worked in the booking department" for the Hays County Jail during the time relevant to this appeal, that his job required him to give individuals being released from jail a packet of paperwork, and that those packets

3

included a "pre-release form" or "a sex offender registration form" if the individual being released was a registered sex offender. Further, Officer Lopez stated that he would explain to the individual being released which portions of the release packet needed to be filled out and would ask the person "to read each section and . . . initial on each question that's asked" to show that he understood the contents of each section. Regarding Marquez, Officer Lopez related that he gave Marquez a prerelease form, that Marquez placed his initials next to the sex-offender registration requirements, and that Marquez signed the form.[1]

During Officer Lopez's testimony, the prerelease form was admitted as an exhibit and shown to the jury. The 2017 prerelease form is entitled "Pre-Release Notification Form Texas Sex Offender Registration Program," specifies that the form is given to individuals released or discharged from a "[p]enal [i]nsitution," lists Marquez's name and other identifying information, includes Marquez's and Officer Lopez's signatures at the end of the document, identifies the agency with whom Marquez needed to register, and contains the phone number for that agency. In addition, the form shows Marquez's initials next to various paragraphs in the document warning him that the failure to comply with the sex-offender registration requirements is a felony offense and specifying, among other requirements, his obligations to register with a "local law enforcement authority in any municipality" in which he "reside[s] or intend[s] to reside for more than seven days" no "later than the 7th day after [his] arrival" and to inform his "primary registration authority" of any change in his home address and "job status (includ[ing] beginning and leaving employment and changing work location)" within seven days "of the change."

---

[1] Although the date next to Marquez's signature indicated that he signed the prerelease form in 2018, the date next to Officer Lopez's signature stated that the document was signed in 2017, and the testimony presented at trial demonstrated that Marquez signed the prerelease form in 2017 before he was charged with failing to register as a sex offender.

4

The State next called Detective Villarreal who testified that he worked in the sex-offender registration division of the Hays County Sheriff's Office in San Marcos during the time at issue, that he received Marquez's 2017 prerelease form from the jail, and that he informed Detective Campbell about having received the form. Further, Detective Villarreal recalled that although the prerelease form provided his contact information for registration purposes, Marquez never contacted him.

Finally, the State called Detective Campbell to the stand. Detective Campbell explained that he works for the San Marcos Police Department, that he is responsible for monitoring sex-offender registration compliance in San Marcos, and that he opened an investigation regarding Marquez after being contacted by Detective Villarreal. Further, Detective Campbell testified that his investigation revealed that Marquez worked for two different employers in San Marcos—Rivas and Tommy Saucedo—between February and September of 2017 and that Marquez was living with his employer (Saucedo) in San Marcos. Moreover, Detective Campbell explained that when he met with Marquez more than two weeks after he signed the 2017 prerelease form, Marquez stated that he had not had time to register. In his testimony, Detective Campbell also stated that Marquez had signed another prerelease form in 2013 that listed the same registration requirements and warnings as the 2017 form. The 2013 form was admitted into evidence and shown to the jury.

During Detective Campbell's testimony, a recording of his interview with Marquez taken with Detective Campbell's body camera was admitted into evidence and played for the jury. On the recording, Marquez admitted that he had been working for Saucedo for approximately a month, that he had been living with Saucedo, that he previously worked for Rivas for months in San Marcos, that he did not inform anyone of his changes in his job status or his change in

5

address because he forgot, that he was in jail in July when he got the 2017 prerelease form reminding him of the need to register, and that he had not yet registered in San Marcos.

After considering the evidence and the parties' arguments, the jury found Marquez guilty of failing to register as a sex offender.

## DISCUSSION

In his sole issue on appeal, Marquez contends that the district "court's admission of" evidence of his "separate and distinct arrest during the guilt innocence phase of trial" through Officer Lopez's testimony and the 2017 prerelease form "constitutes reversible error." Because Officer Lopez's testimony and the prerelease form itself explained that those types of forms are given to individuals who are released from jail, Marquez contends that the evidence constituted impermissible extraneous-offense evidence. Further, Marquez argues that the probative value of the evidence was outweighed by the danger of unfair prejudice. Accordingly, Marquez urges that the evidence was inadmissible under the Rules of Evidence. *See* Tex. R. Evid. 403, 404(b).

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the

6

court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Furthermore, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but this type of "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b). In addition, courts have explained that "extraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination." *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Furthermore, "extraneous offense evidence may be admissible as contextual evidence," *Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd), because juries are "entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum," *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)).

On appeal, Marquez recognizes that extraneous-offense evidence may be admitted as contextual evidence, but he contends that this type of evidence should only be admitted where the two crimes are blended and where proof of the charged offense cannot be given without providing proof of the extraneous offense. *See, e.g.*, *id.* at 25-26 (concluding that "[t]he evidence of the sexual assault was so intertwined with the murder that the jury's understanding of the offense would have been obscured without it"); *LaPointe v. State*, 196 S.W.3d 831, 837-38 (Tex. App.—Austin 2006) (affirming trial court's ruling admitting evidence of offenses occurring in Travis County in trial for offenses occurring in Williamson County because "offenses were so

7

intermixed that they formed an indivisible criminal transaction" and because excluding evidence pertaining to offenses occurring in Travis County "would have left an unexplained twelve-hour gap in" victim's "narrative of the crime"), *aff'd*, 225 S.W.3d 513 (Tex. Crim. App. 2007). Further, Marquez insists that his alleged failure to register was not "tightly intertwined with the unrelated arrest" for which he was jailed weeks prior to being charged in this case and "that the jury did not need to know why Detective Campbell began investigating" him to determine if he was guilty of the charged offense.

Although Marquez correctly notes that the State urged at trial that the prerelease form should be admitted as contextual evidence, *see Swarb*, 125 S.W.3d at 681 (explaining that "[t]here are two types of contextual evidence: (1) evidence of other offenses connected with the primary offense, referred to as same transaction contextual evidence; and (2) general background evidence, referred to as background contextual evidence"), the district court could have also determined that the evidence was admissible under Rule 404 as evidence rebutting Marquez's defensive theory presented during his opening statement that he mistakenly failed to register or was confused as to how to comply with the requirements, *cf. Varnes v. State*, 63 S.W.3d 824, 833 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (explaining that if State alleged that defendant knowingly failed to register, courts treat "the *mens rea* requirement . . . as going to the actual knowledge of the defendant's duty to register"). By presenting this defensive theory in his opening statement, Marquez opened "the door to rebuttal evidence in the form of extraneous offenses." *See Gaytan v. State*, 331 S.W.3d 218, 225 (Tex. App.—Austin 2011, pet. ref'd). In addition, the evidence helped to rebut his defensive theory by establishing that Marquez had been reminded of his statutorily imposed obligations to register his new address and his change in employment status weeks before his arrest in this case, that he acknowledged those obligations by placing his

8

initials next to each one and by signing the prerelease form, and that he had been given the contact information for the agency overseeing sex-offender registration in San Marcos.

For these reasons, we conclude that the district court did not abuse its discretion by admitting the prerelease form because it was admissible under Rule 404(b) as evidence rebutting Marquez's defensive theory. *See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (stating that "[a] trial court's 404(b) ruling admitting evidence is generally within . . . zone [of reasonable disagreement] if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue").

As discussed previously, Marquez also argued during trial that the evidence should not be admitted under Rule of Evidence 403, and the district court overruled that objection. In his brief, Marquez also challenges that ruling by the district court.

Under the Rules of Evidence, "[r]elevant evidence is admissible unless" provided otherwise by "the United States or Texas Constitution," "a statute," the Rules of Evidence, or "other rules prescribed under statutory authority," Tex. R. Evid. 402, but relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence," *id.* R. 403; *see also id.* R. 401 (specifying that "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action"). "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks

9

omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted). Moreover, reviewing courts should bear in mind that trial courts are given a high level of deference regarding a determination that evidence should be admitted under Rule 403. *See Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd).

Regarding the admissibility of evidence under Rule 403, courts performing a Rule 403 analysis should balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted); *see Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (explaining that "probative value" refers to how strongly evidence makes existence of fact more or less probable and to how much proponent needs evidence and that "unfair prejudice" considers how likely it is that evidence might result in decision made on improper basis, including emotional one).

On appeal, Marquez argues that the evidence had little probative value because, according to him, evidence establishing that he "was arrested on an unrelated charge several weeks before the investigation of the charges at hand[] does not make the fact that he failed to

10

comply with the sex offender registration requirements more or less probable." Even if the prerelease form and Officer Lopez's testimony on their own may not have helped to establish whether Marquez was actually in compliance with the registration requirements, the admonition of the sex-offender requirements given more than two weeks before Marquez's charged conduct rebutted his defensive theory that he was confused about his duty to register. Accordingly, the district court could have determined that the probative value of the exhibit weighed in favor of admission.

Next, Marquez contends that the State did not need to introduce the evidence "to show that he knew he was required to register as a sex offender" because the district court admitted into evidence "an **identical** pre-release document signed and initialed by him" in 2013 that also informed him "of what his duties were in regard to complying with the sex offender registration." Similarly, Marquez highlights that he stipulated at the start of trial that he was obligated to register as a convicted sex offender and points to testimony from Detective Campbell indicating that "when defendants are convicted of a case requiring sex offender registration, . . . they are told all the requirements to comply with sex offender registration upon conviction." For these reasons, Marquez urges that the State's need for Officer Lopez's testimony and the 2017 prerelease form did not weigh in favor of admission.

Although Marquez points out that other evidence was presented at trial indicating that he was given warnings identical to or similar to those found in the 2017 prerelease form, the evidence presented at trial demonstrated that Marquez was given those similar warnings in 1994 when he was convicted of indecency with a child and in 2013 when he was given a separate prerelease form and that he had been living in another town before moving to San Marcos. In contrast, the 2017 prerelease form and the testimony from Officer Lopez demonstrated that

11

Marquez was reminded about the need for complying with the sex-offender registration requirements just a few weeks before he was charged in this case and while he was living in San Marcos. Moreover, the testimony from Detective Campbell and the 2013 prerelease form were not admitted until after the district court made its ruling regarding the 2017 prerelease form and Officer Lopez's testimony. *See Khoshayand*, 179 S.W.3d at 784. Similarly, although the recording from Detective Campbell's body camera chronicles Marquez stating that he was in jail shortly before talking with Detective Campbell and that he was reminded of his registration requirements when he was released from jail, that recording was not admitted and played for the jury until after Detective Lopez testified and after the 2017 prerelease form was admitted into evidence. Accordingly, the district court could have concluded at the time of its ruling that the State's need for Detective Lopez's testimony and the 2017 prerelease form either weighed in favor of admission or was neutral regarding the admission.

Regarding the potential for the evidence to suggest a decision on an improper basis, Marquez asserts that "allowing the jury to know during the guilt/innocence phase that [he] committed theft . . . had to have the harmful effect on the jury that [he] was an untrustworthy and dishonest person, and that therefore [he] intentionally circumvented the sex offender registration for some malicious reason." *See Gigliobianco*, 210 S.W.3d at 641 (stating that evidence might encourage decision on improper basis if it arouses jury's "hostility or sympathy . . . without regard to the logical probative force of the evidence"). However, nothing in the prerelease form or in the testimony at trial stated what type of offense led to his being jailed before signing the prerelease form. *Cf. Powell v. State*, 189 S.W.3d 285, 289 (Tex. Crim. App. 2006) (affirming admission of evidence demonstrating that defendant was on parole and noting that danger of unfair prejudice was minimized by fact that jury "was not informed of the crime for which [defendant] was on

12

parole"). Moreover, nothing in the language of the 2017 prerelease form or Officer Lopez's testimony was inflammatory or otherwise prejudicial beyond stating that Marquez was released from some type of correctional facility before signing the form, and the remainder of Officer Lopez's testimony and the language in the form was consistent with Marquez's stipulation that he was required to comply with the sex-offender registration requirements. *Cf. Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at \*5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) (explaining that "[w]hen the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice"). Accordingly, the district court could have reasonably determined that the potential for the evidence to result in a decision on an improper basis either weighed slightly against admission or was neutral regarding admission.

Turning to the potential for the evidence to confuse the jury and for the jury to give undue weight to the evidence, the district court could have reasonably concluded that the evidence regarding the prerelease form would not "distract the jury from the main issues in the case" because the evidence related to the charged offense of failing to register. *See Gigliobianco*, 210 S.W.3d at 642. Similarly, given that the evidence did not address a complex subject matter, the district court could have reasonably concluded that the jury would not give undue weight to the evidence. *See id.* at 641 (explaining that scientific evidence is one type of evidence that might mislead jury not properly equipped to consider probative value). Moreover, the jury charge included a limiting instruction specifying the permissible purposes for which the jury could consider evidence of Marquez's prior bad acts. *Cf. Stokes v. State*, 74 S.W.3d 48, 51 (Tex. App.—Texarkana 2002, pet. ref'd) (providing that absent evidence to contrary, reviewing

courts must presume that jury understood and followed jury instructions).  Accordingly, the district court could have reasonably determined that these factors weighed in favor of admission.

Finally, Marquez argues that the amount of time needed to present the evidence weighed against admission.  In particular, Marquez notes that the State only called five witnesses during the trial; that the testimony of one of the State's witnesses, Officer Lopez, was solely dedicated to providing a general background on prerelease forms and to discussing the 2017 form signed by Marquez; that the State also questioned other witnesses about the 2017 prerelease form; that the form and Marquez's placement in jail were also mentioned in the recording from Detective Campbell's body camera; and that the State repeatedly mentioned the form during its closing arguments.  For these reasons, Marquez contends that the amount of time dedicated to the prerelease form was significant given the short duration of the trial and weighed against admission of the evidence.

Although it is true that Detective Lopez's testimony discussed prerelease forms generally and the circumstances surrounding Marquez's signing and initialing of the form at issue, his testimony was only thirteen pages in length, and the prerelease form itself is only two pages in length.  Moreover, the testimony from witnesses other than Detective Lopez regarding the prerelease form and the discussion of the form on the recording from Detective Campbell's body camera were relatively brief.  However, the portion of the record containing all of the testimony from individuals other than Officer Lopez during the guilt-or-innocence phase was just roughly sixty pages in length.  Accordingly, the district court could have reasonably determined that the time needed to develop the evidence either weighed against admission of the evidence or was neutral regarding the admission.

14

Given our standard of review, the presumption in favor of admissibility, and the resolution of the factors discussed above, we cannot conclude that the district court abused its discretion by overruling Marquez's Rule 403 objection. *Compare Schiele v. State*, No. 01-13-00299-CR, 2015 WL 730482, at *7, *8 (Tex. App.—Houston [1st Dist.] Feb. 19, 2015, pet. ref'd) (mem. op., not designated for publication) (determining that fact that evidence in dispute spanned 50 pages of 118-page record and was also admitted through two recordings weighed against admissibility because evidence consumed "not insignificant" amount of time but still finding that trial court did not abuse its discretion where half of factors relevant to Rule 403 analysis weighed in favor of admissibility), *and McGregor v. State*, 394 S.W.3d 90, 121-22 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (concluding that fact that evidence of extraneous offenses constituted one-third of trial weighed against admissibility but upholding trial court's decision to admit evidence because other factors favored admission), *with Russell v. State*, 113 S.W.3d 530, 543-49 (Tex. App.—Fort Worth 2003, pet. ref'd) (determining that trial court erred by admitting evidence of extraneous offenses where evidence was 30 percent of testimony, where State's need for evidence was low "because ample evidence" existed regarding intent, and where evidence of extraneous offense was "more heinous" than charged offense).

For all of these reasons, we overrule Marquez's issue on appeal.

## CONCLUSION

Having overruled Marquez's issue on appeal, we affirm the district court's judgment of conviction.

_____
Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   October 25, 2019

Do Not Publish